**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| XEROX CORPORATION, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :     C. A. No. 10-136-JJF-MPT |
| | : |
| GOOGLE, INC., YAHOO! INC., RIGHT MEDIA INC., RIGHT MEDIA, LLC, YOUTUBE, INC., and YOUTUBE, LLC, | : |
| | : |
| Defendants. | : |

**MEMORANDUM ORDER**

**I. BACKGROUND**

The parties in this patent case dispute whether the court's permanent protective order should include a provision preventing any of plaintiff's trial counsel with exposure to defendants' confidential information from participating in amendment of plaintiff's patents on reexamination. Following a teleconference on this issue, the court requested and received additional submissions from the parties.[1] Having considered these submissions and the relevant law, the court concludes that plaintiff should not be denied the advice of its trial counsel in amending claims on reexamination, and adopts plaintiff's proposed language for its permanent protective order.

**II. LEGAL STANDARD**

A party seeking a protective order has the burden of showing good cause for its issuance.[2] The same is true for a party seeking to include in a protective order a

---

[1] D.I. 74; D.I. 75.
[2] *See* Fed. R. Civ. P. 26(c); *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1209-10 (Fed. Cir. 1987).

provision effecting a prosecution bar.[3]

Prior to the recent case of *In re Deutsche Bank Trust Co.*,[4] the Federal Circuit had not issued a published opinion addressing when an attorney's activities in prosecuting patents on behalf of a client raises an unacceptable risk of inadvertent disclosure of confidential information.  The *Deutsche Bank* court drew on the analysis of *U.S. Steel Corp. v. United States*, which stated that "[w]hether an unacceptable opportunity for inadvertent disclosure exists . . . must be determined . . . by the facts on a counsel-by-counsel basis . . . ."[5]  The *U.S. Steel* court instructed that this determination should turn on the extent to which counsel is involved in "competitive decisionmaking" with its client, defined as:

> activities, association, and relationship with a client [involving] counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor.[6]

*Deutsche Bank* refined *U.S. Steel* by clarifying that not every patent prosecution attorney is necessarily involved in competitive decisionmaking.[7]  In so finding, the court distinguished administrative and oversight duties from activities in which counsel play a "significant role in crafting the content of patent applications or advising clients on the direction to take their portfolios."[8]  The court explained that the latter group of activities–including "strategically amending or surrendering claim scope during

---

[3] *In re Deutsche Bank Trust Co.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010).
[4] *Id.*
[5] 730 F.2d 1465, 1468 (Fed. Cir. 1984).
[6] *Id.* at 1468 n.3.
[7] 605 F.3d at 1379.
[8] *Id.* at 1379-80.

prosecution"–posed a more significant risk of inadvertent disclosure than the former.[9]

Even where a risk of inadvertent disclosure or competitive use exists, however, this court must balance that risk against the potential harm to the opposing party in denying it the counsel of its choice.[10] In evaluating this potential harm, a court should consider such things as

> the extent and duration of counsel's past history in representing the client before the [Patent and Trademark Office ("PTO")], the degree of the client's reliance and dependence on that past history, and the potential difficulty the client might face if forced to rely on other counsel for the pending litigation or engage other counsel to represent it before the PTO.[11]

After balancing these competing interests, the court has broad discretion to decide what degree of protection is required.[12]

Though *Deutsche Bank* dealt only with provisions limiting participation in patent prosecution, the court considers its logic applicable in the context of patent reexamination as well. Just as in *Deutsche Bank*, the competing interests involved here pit protection of defendants' confidential information against plaintiff's right to counsel of its choice. And just as in patent prosecution, the primary factor affecting the risk of inadvertent disclosure during reexamination is the extent to which counsel are involved in competitive decisionmaking with the client.

---

[9] *Id.*
[10] *Id.* at 1380 (citing *U.S. Steel*, 730 F.2d at 1468; *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992)).
[11] *Id.* at 1381.
[12] *Id.* at 1380 (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *Brown Bag Software*, 960 F.2d at 1470).

## III. DISCUSSION

### A. Risk of Inadvertent Disclosure of Confidential Information

Defendants raise a legitimate concern that their confidential information could be competitively misused in strategically narrowing plaintiff's patent claims during reexamination. Because the parties have agreed that discovery materials within the scope of the interim protective order may only be used for purposes of this litigation,[13] and because the Federal Circuit has suggested that reexamination proceedings fall outside the scope of corresponding district court litigation,[14] the court agrees with defendants that *any* use of their confidential information by plaintiff during reexamination would be improper and a violation of the interim protective order.

While acknowledging the existence of this risk, the court does not consider it "unacceptable" as delineated by *U.S. Steel* and *Deutsche Bank*. Unlike patent prosecution, reexamination is a limited proceeding assessing only the patentability of existing claims against specific prior art references.[15] Defendants' confidential information is "basically irrelevant" to that particular determination.[16] Moreover, while claims may be broadened during prosecution to support new, tailor-made infringement allegations, amendments made during reexamination can only serve to *narrow* the original claims.[17] Hence, no product that did not infringe a patent before reexamination

---

[13] *See* D.I. 67-1, Agreed Protective Order, at ¶ 1(A)(1).
[14] *See Grayzel v. St. Jude Medical, Inc.*, 162 Fed. Appx. 954, 966 (Fed Cir. 2005).
[15] *See* 35 U.S.C. §§ 302, 311.
[16] *Kenexa Brassring Inc. v. Taleo Corp.*, Civ. A. No. 07-521-SLR, 2009 WL 393782, at *2 (D. Del. Feb. 18, 2009).
[17] 35 U.S.C. § 305 ("No proposed amended or new claim enlarging the scope of a claim of the patent will be permitted in a reexamination proceeding . . . ."); 35 U.S.C. §

could ever infringe that patent following reexamination.[18]  Furthermore, to the extent additional details are added to a claim in reexamination to distinguish it from the prior art, those details must already exist in the original patent's specification.[19]  In any event, plaintiff will certainly seek to preserve the broadest possible reading of its claims on reexamination regardless of any insight gleaned from defendants' confidential information.

### B.  Potential Harm from Limiting Choice of Counsel

In comparison to the attenuated risk of competitive misuse of defendants' confidential information, the potential harm in denying plaintiff reexamination counsel of its choice is significant.  Plaintiff clearly has a strong interest in choosing its own counsel–particularly in the complex and technical realm of patent litigation.[20]  Here, plaintiff's trial counsel have acquired expertise in the patents-in-suit as well as the relationship between plaintiff's claim language and the prior art.  Forcing plaintiff to rely on less knowledgeable counsel during reexamination would thus increase costs and duplicate effort.

Plaintiff also has a legitimate interest in formulating a coherent and consistent

---

314(a) (stating the same for *inter partes* reexaminations).

[18]   *See Predicate Logic, Inc. v. Distributive Software, Inc.*, 544 F.3d 1298, 1302-03 (Fed. Cir. 2008).

[19]   *See In re Reiffin Family Trust*, 340 Fed. Appx. 651, 659 (Fed. Cir. 2009) ("[A]lthough a patentee is permitted to amend both the claims and the specification of his patent on reexamination . . . he is not allowed to do so in a manner that has the effect of enlarging the scope of the patent's claims.") (citing 35 U.S.C. § 305; 37 C.F.R. § 1.530(d)(1); *Creo Prods., Inc. v. Presstek, Inc.*, 305 F.3d 1337, 1344 (Fed. Cir. 2002); *In re Freeman*, 30 F.3d 1459, 1464 (Fed. Cir. 1994)).

[20]   *See In re Yamaha Corp.*, 62 F.3d 1431, 1995 WL 412843, at *3 (Fed. Cir. 1995); *Elonex I.P. Holdings, Ltd. v. Apple Computer, Inc.*, 142 F. Supp. 2d 579, 584 (D. Del. 2001).

litigation strategy.  While a parallel reexamination proceeding may not formally be part of this litigation, choices made before the PTO nonetheless have consequences in this court.  The validity of reexamined and amended claims, for example, will ultimately have to be explained and defended before a jury in this litigation.[21]  Trial counsel are better suited to assess claim language to this end than reexamination counsel, who practice before the PTO and do not try cases to a jury.[22]  Additionally, because reexamination (especially *inter partes* reexamination) is an increasingly important venue for challenging a patent's validity,[23] preventing trial counsel exposed to defendants' confidential information from fully participating in reexamination proceedings would force plaintiff to split its resources between two fronts of the same war.

---

[21] *See Intest Corp. v. Reid-Ashman Mfg., Inc.*, 66 F. Supp. 2d 576, 583 (D. Del. 1999) ("[I]f the reexamined and original claims are not identical, then the patentee has no right to damages for infringement prior to the reissue or reexamination date, because the original patent has been surrendered and is extinguished.") (citing *Kaufman Co., Inc. v. Lantech, Inc.*, 807 F.2d 970, 976 (Fed. Cir. 1986)); *Kenexa*, 2009 WL 393782 at *2 n.2 ("The court considers amendments and revisions to claims on reexamination to be admissions regarding validity.  Should plaintiff take an inconsistent position (to its litigation position) and revise its claims during reexamination, the court will consider the scope and effect of any such admission on an appropriate motion.").

[22] Defendants argue that "by the stage of reexamination proceedings in which [plaintiff] would be forced to resort to amendment of claims or preparation of new claims, it will no doubt have been made quite clear to any competent reexamination counsel precisely what obstacles to the validity of the original claims were presented by the prior art." D.I. 75 at 5.  This arguement, however, does not answer plaintiff's point that it would be better positioned to defend validity before a jury if its trial counsel were permitted to assist reexamination counsel in drafting proposed amendments.

[23] *See* Sterne, Robert Greene et al., *Reexamination Practice with Concurrent District Court or USITC Patent Litigation*, The Sedona Conference (2008), *available at* http://www.skgf.com/media.php?NewsID=472 ("[R]eexaminations exert a growing influence on patent litigation as reexamination becomes a viable (or even preferred) venue to challenge patent validity, especially where the option of inter partes reexamination becomes more routinely available.").

**IV. CONCLUSION AND ORDER**

In light of the above, defendants have failed to show good cause for their proposed reexamination bar.  The court concludes that the risk of inadvertent or competitive use of defendants' confidential information by plaintiff's trial counsel in evaluating potential claim amendments on reexamination is outweighed in this case by the potential harm in denying plaintiff the full benefit of its trial counsel in that venue. Therefore, IT IS ORDERED that:

1. Plaintiff's proposed language concerning paragraph 2(C) of the Agreed Protective Order (D.I. 67-1) is adopted;
2. On or before September 22, 2010, the parties shall submit a permanent protective order incorporating this language as well as the court's other decisions announced in the teleconference of August 19, 2010 (D.I. 73).

Date:   September 8, 2010                                    /s/ Mary Pat Thynge
                                                                        United States Magistrate Judge