```
 1                IN THE UNITED STATES DISTRICT COURT

 2                IN AND FOR THE DISTRICT OF DELAWARE

 3                           - - -
     XEROX CORPORATION,                    CIVIL ACTION
 4                                  :
          Plaintiff,                :
 5                                  :
               v.                   :
 6                                  :
     GOOGLE, INC., YAHOO! INC., RIGHT :
 7   MEDIA  INC., RIGHT MEDIA LLC,    :
     YOUTUBE, INC., YOUTUBE, LLC,     :
 8                                  :    NO. 10-136 (LPS)
          Defendants.
 9                           - - -

10                     Wilmington, Delaware
                      Thursday, May 19, 2011
11                   CLAIM CONSTRUCTION HEARING

12                           - - -

13   BEFORE:        HONORABLE LEONARD P. STARK, U.S.D.C.J.

14   APPEARANCES:                  - - -

15
          ASHBY & GEDDES, P.A.
16        BY:  JOHN G. DAY, ESQ.

17             and

18        CRAVATH SWAINE & MOORE, LLP
          BY:  RICHARD J. STARK, ESQ.,
19             ANDREI HARASYMIAK, ESQ.,
               SCOTT A. LESLIE, ESQ., and
20             (New York, New York)

21                  Counsel for Xerox Corporation

22
          POTTER ANDERSON & CORROON, LLP
23        BY:  RICHARD L. HORWITZ, ESQ.

24             and

25                              Brian P. Gaffigan
                                Official Court Reporter
```

1    APPEARANCES:  (Continued)

2

3            QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
             BY:  DAVID A. PERLSON, ESQ., and
4                 JOSH SOHN, ESQ.
                  (San Francisco, California)

5                     Counsel for Google, Inc., YouTube, Inc.,
                      and YouTube, LLC

6

7            MORRIS NICHOLS ARSHT & TUNNELL, LLP
             BY:  MARYELLEN NOREIKA, ESQ.

8                 and

9
             DAVIS POLK & WARDWELL, LLP
10           BY:  ANTHONY I. FENWICK, ESQ.,
                  DAVID J. LISSON, ESQ.
11                (Menlo Park, California)

12                    Counsel for Yahoo! Inc. and Right Media, LLC

13

14

15

16                            - oOo -

17                    P R O C E E D I N G S

18           (REPORTER'S NOTE:  Claim construction hearing

19    took place in open court, starting at 8:38 a.m.)

20           THE COURT:  Good morning, everybody.

21           (The attorneys respond "Good morning, your Honor.")

22           THE COURT:  If you would all put your

23    appearances on the record, please.

24           MR. DAY:  Good morning, your Honor.  John Day

25    from Ashby & Geddes as Delaware counsel for plaintiff Xerox

```
 1   Corporation.  With me this morning, your Honor, Xerox's lead
 2   counsel, Richard Stark.
 3            MR. STARK:  Good morning, your Honor.
 4            MR. DAY:  Scott Leslie and Andrei Harasymiak
 5   from Cravath Swain & Moore in New York.  And also with us
 6   this morning, Sharon Goswami who is a summer associate from
 7   Cravath.
 8            THE COURT:  Welcome to all of you.
 9            MR. DAY:  Thank you.
10            MS. NOREIKA:  Good morning.
11            THE COURT:  Good morning.
12            MS. NOREIKA:  Maryellen Noreika from Morris
13   Nichols for the Yahoo! and Right Media defendants.  With me
14   are Anthony Fenwick and David Lisson from Davis Polk.
15            THE COURT:  Welcome.
16            MR. HORWITZ:  Good morning, your Honor.
17            THE COURT:  Good morning.
18            MR. HORWITZ:  Rich Horwitz from Potter Anderson
19   & Corroon for Google.  With me at counsel table, David
20   Perlson from Quinn Emanuel.  Also from Quinn Emanuel, Josh
21   Sohn.  And then from Google, John LaBarre and Doug Hudson.
22            THE COURT:  Welcome to all of you as well.
23            So we are here this morning, as everybody knows,
24   principally on claim construction, but there is a couple of
25   discovery issues that you all raised in your letters.  As
```

1    you all seem to have figured out, I'd like to start with

2    claim construction.  Have you talked about how you might

3    like to proceed in that regard?

4                    MR. STARK:  Yes, your Honor.  We did talk about

5    it.

6                    Our proposal was to have the plaintiff go first

7    on all the claim construction issues, then defendants' side;

8    and if okay with your Honor, I'd like to reserve some piece

9    for rebuttal.

10                   THE COURT:  And that is defendants' request as

11   well?

12                   MR. PERLSON:  That is fine with us, your Honor.

13                   THE COURT:  Defendants, do you intend to present

14   separately or just one of you?

15                   MR. PERLSON:  I'll be doing most of the

16   argument, and Mr. Fenwick may do some clean-up.

17                   MR. FENWICK:  If I may reserve five minutes,

18   your Honor, which I may not use.

19                   THE COURT:  That's fine.

20                   So we'll hear first from plaintiffs, then

21   defendants; and then if you have time, you can each rebut

22   one another for a few minutes on claim construction.  Then

23   assuming we have any of your hour and-a-half each left,

24   we'll talk a little bit about discovery.

25                   Mr. Stark, it appears you are up first.

1                MR. STARK:  Thank you very much, your Honor.

2                Your Honor, just to summarize the issues that we

3       are going to touch on briefly, one of the very big picture

4       issue here has to do with whether the scope of a search

5       generated by the claimed invention will be restricted or

6       broadened.  There has been a lot of discussion about that,

7       particularly in defendants' pictures.

8                I'd like to clear that at the outset and suggest

9       there is no dispute there.  There is no question the claim

10      says the search has to be restricted.  We haven't argued to

11      the contrary in our papers.  I think maybe the parties have

12      been missing each other.  But we're not arguing the purpose

13      of the claim is to broaden the scope of a search.  That's

14      just not what it's about.

15               THE COURT:  So if your proposed construction on

16      any term could be read as leading to a broadening, then I

17      should not go with what you propose; correct?

18               MR. STARK:  I would agree with that.  That's

19      not our intent to come up with something that broadens the

20      scope of search.  It's supposed to be something that is

21      restricted.

22               Now, what are the serious issues here?

23               First of all, in my view, is the issue of

24      whether the claims are invalid for indefiniteness.  It seems

25      to me that is something that ought to be cleared up right up

1    front.  Clearly, we submit the claims are not invalid for

2    indefiniteness.  I think that is a logical place to start on

3    this question relating to validity and starts right at the

4    beginning of the claim, which is the term "selected document

5    content."  So that would be the first issue that I would

6    like to address, your Honor.

7              Then second, what I think is almost the biggest

8    substantive issue between the parties is whether the claim

9    is talking about having just a single classification label

10   and, therefore, a single category of information to be

11   within the scope of a search or whether it can be more than

12   one classification, more than one category.

13             I think it is really not fairly disputable when

14   we look at the intrinsic evidence that it can be more than

15   one of each, more than one label and more than one category

16   that could be included in the scope of the search.  I will

17   take your Honor through that very carefully.

18             That is going to take us through, as we go, both

19   the categorizing step and the formulating step in the claim.

20   Largely, I'm going to be referring to claim 1 throughout

21   this as we go through this because that is the overarching

22   claim.

23             Then we come to the end of this to the issue of

24   the label.  What kind of format does the label have to have?

25   That seems to be in dispute between the parties.  I would

1    submit it shouldn't be because the claim doesn't call for

2    any format.  It could be any format at all.

3            Then, lastly, the order of steps.  We had a bit

4    of back and forth on that, and I will touch on that right at

5    the end.

6            So, first, your Honor, I'd like to go right to

7    the issue of indefiniteness and "selected document content."

8            THE COURT:  Do you have copies of your

9    presentation for us?

10           MR. STARK:  Yes.

11           THE COURT:  If you have two, that would be

12   preferable.

13           MR. STARK:  I'm so terribly sorry.  We somehow

14   managed to only get here with one.

15           THE COURT:  You can submit a second one later.

16           MR. STARK:  So we see, your Honor, the term

17   "selected document content" obviously comes up throughout

18   the claim, comes up right at the beginning where the claim

19   is talking about generating a query from selected document

20   content.

21           If we can go to the next slide.

22           The parties contentions are this way.  We

23   contend that "selected document content" just means "all or

24   part of a document ..."  Basically, the subject document

25   that the claimed method, essentially a computer routine, is

1    going to work on.  And it has to be in electronic form

2    because we're talking about a computer invention here,

3    clearly.

4            Defendants say, gosh, we don't know what

5    "selected document content" means.  It must be indefinite.

6            If we can flip over to the next slide.

7            The law says, your Honor, "A claim will be found

8    indefinite only if it 'is insolubly ambiguous and no

9    narrowing construction can be properly be adopted ...'"  But

10   it's really the insolubly ambiguous issue.  It's a pretty

11   high standard.  What it is referring to is if a person

12   skilled in the art, after reading the whole patent, couldn't

13   understand what you are talking about with a particular

14   term, then, and only then, could it be indefinite.

15           Here, the defendants raise only one argument

16   really as to indefiniteness.  That is, they say there is

17   lack of so-called antecedent basis for the term "selected

18   document content."

19           I suggest, your Honor, there is no such issue

20   here at all.  Lack of antecedent basis is patent law talk

21   for when you have something that says "said lever" or

22   something like that.  Then "said lever" or "the lever"

23   suggests there was a preceding or antecedent occurrence of

24   that word in the claim, and you could have an issue, gee, if

25   there wasn't one, if it was left out, then maybe I don't

1    know what "the lever" or "said lever" means later in the

2    claim.

3              We don't have that here at all.  It just says

4    "selected document content" and not referring to anything

5    back.  So there is no antecedent basis.  That is just a

6    nonstarter argument.

7              I would also point out, just incidentally, that

8    the cases that the defendants cite on this point don't

9    advance the ball for them at all.  The Halliburton case, the

10   principal case they cite, simply says:  amongst the list of

11   ways a claim could possibly be indefinite is if there was a

12   lack of antecedent basis.  But that wasn't actually the

13   issue in the Halliburton, and the case that Halliburton

14   cited for that proposition, Energizer, found there was no

15   indefiniteness even though there was a lack of antecedent

16   basis.  Judge Newman said, from the Federal Circuit, in that

17   case, well, a person skilled in the art can still figure out

18   what the claim was about.

19             So, legally, this is very, very weak argument,

20   really, a nonstarter, because there is no antecedent basis

21   issue here.

22             If we can go to the next slide.

23             As for what "selected document content" means,

24   we would submit, your Honor, that it's really pretty clear

25   from the text of the patent just what it is.  It's really

1    talking about the input document that is going to be input

2    to the entity extractor and the categorizer or the

3    extraction of entity step and the automatically categorizing

4    step in the claim.

5           That is really illustrated in Figure 38 where

6    element 3612 in the upper left there is shown as being input

7    to the entity extractor and also is input to the categorizer

8    and that element 3612 is referred to in the accompanying

9    text as document content.

10          So I would submit there is really not any

11   ambiguity there as to what is at least document content when

12   you are talking about what has been invented here.

13          As for the selected part, well, it's really just

14   talking about, if you have one document in particular, a

15   particular iteration of this process of the claimed method,

16   you're operating on a piece of document text.  So you are

17   just identifying it by saying, well, here is a selected

18   piece of text, a selected document content that is going to

19   be an input to the process.

20          It's also described in the claim as well as in

21   Figure 38 as the input to both the entity extractor, that

22   says where the entities are going to be found, and the input

23   to the categorizer, that is the text from which the

24   categories are going to be determined.  So that also makes

25   the bounds of the claims well understandable to a person of

1    skill in the art; and that's the issue for indefiniteness.

2         I think, as this term was selected, it seems to

3    me an analogy helps to understand and dispel any mystery

4    defendants might have cast on this.  The analogy that came

5    to mind for me is when we go to a restaurant, we're

6    presented with a menu.  As a customer, our first task is to

7    select something off the menu, select a food item that we

8    want to order.  The server comes along and takes your order,

9    writes down the item you selected, takes that and gives it

10   to the chef.

11        Now, if you look at it from the chef's

12   perspective, the chef's job is to take orders that specify a

13   selected menu item.  He cooks them up and returns them back

14   to the server to be delivered to the patrons.  It doesn't

15   matter to the chef who gave them the order and which person

16   at the table, whatever table.  Maybe even the server

17   selected it at the customer's request.  It doesn't matter

18   who selected it.  It doesn't matter who selected it.  The

19   chef's job is just to cook the selected item.

20        That is really what we're looking at in the

21   claim here.  The job, the routine described in the claim is

22   to take a selected piece of document content that it is

23   presented with, extract entities categorize it, formulate a

24   query.  There is really no mystery about that.

25        I would also like to just refer your Honor to

1   column 48 in the patent.

2            Let's see if I can test my technology skills

3   here.   (Using Elmo.)

4            Near -- actually, right at the top of the

5   screen, it says, "in accordance with searches performed by

6   services of the meta document server 200."  It's talking

7   about searches within the context of this overall document

8   system described in the patent.

9            It says, "one or more documents relating to a

10  task are identified and uploaded to the meta document server

11  200.  From these documents, queries are generated for

12  specified services automatically."

13           So this is actually, in terms of the embodiment,

14  this is kind of a starter point.  So some documents are

15  uploaded to the meta document servers.  There are some

16  selected documents right there.

17           Then it goes on to say, "as set forth above,

18  the document service request in a personality associated

19  with an uploaded document identifies entities that are used

20  to perform other document service requests such as queries."

21           So we're going to take an uploaded document, one

22  of the ones that are uploaded, and extract entities from it.

23           Then it talks about the manner in which the

24  entities are selected.  Then it goes on to talk about

25  extracting or determining categories from one of the

1       documents that was uploaded to the meta document server.

2                       And there is also, just to kind of complete the

3       picture, Figure 1.  There are other figures as well, Figure

4       1 is just one of them.  There is a discussion of what a meta

5       document within the meta document server looks like.  And

6       one of the things it has in it is document content.  There

7       are other things that have been added to the content, markup

8       and some information about the so-called personality, what

9       services might be called to operate on the document.  But

10      there is content right there.

11                      So I respectfully submit this, looking at column

12      48 and these couple of figures, shows quite clearly where a

13      selected document comes from.  It's selected meaning it's

14      identified as one of the ones that has been uploaded to the

15      system and the document content is just a content.

16                      As we pointed out in our papers, "selected

17      document content" is reference 38.  The reference to Figure

18      38 which we saw showed the document content going to the

19      categorizer and the extractor.

20                      The text again in column 48 here says, down

21      around line 52:  "In operation, as shown in Figure 38, the

22      document content 3612 or alternatively limited context

23      (i.e., word, sentences or paragraphs) surrounding the entity

24      is analyzed by the categorizer."

25                      It says you could take the whole content, you

1      could take some limited context, either way.

2               THE COURT:  So they, the defendants, fault you

3      because they say your construction allows for even a single

4      word to be a document.  Address that criticism.

5               MR. STARK:  Well, I think a single word in

6      theory could be some selected document content wouldn't get

7      you very meaningful results if you do that.  I think there

8      is nothing -- I think that says that couldn't be potentially

9      some content.

10              THE COURT:  And what is your construction and

11     how should it be read in connection with a paper document

12     that is later scanned and made into an electronic format?

13     Do you mean to include that or not include that.

14              MR. STARK:  I don't mean to include the paper

15     document as such, your Honor.  But if I took a paper

16     document and scanned it into the machine, the electronic

17     representation of it would become a document and potentially

18     could be "selected document content" for purposes of this

19     claim.  I think the patent actually discusses that at one

20     point.

21              Do you know which button I need to push to get

22     back to the ... ah, thanks.

23              So that, your Honor, takes us through the issue

24     of "selected document content."  In summary, I think it's

25     quite plain from the specification and, frankly, from the

1    claim itself what it is.  It's input to the routine that is

2    specified by the claim or the method specified by the claim.

3                 There is really no ambiguity about it.

4    Certainly, no lack of antecedent basics, which is the only

5    112 argument that the defendants actually raised.

6                 If we can go on to the next slide then or slide

7    9, actually.

8                 I'd like to move on then to the issue of

9    "categorizing the selected document content..."  This is

10   really the first step in the whole issue about whether we're

11   talking in this claim about one classification label or more

12   than one and where they were talking about one category of

13   information or more than one.  This, as the defendants have

14   rightly said, is the crux of the dispute between the

15   parties.

16                 In the defendants' construction here, they say

17   "using the organized classification of document content to

18   categorize the selected document content and to assign to

19   the selected document content a single classification

20   label."

21                 Then they, of course, go on to say, "a single

22   classification label corresponds to a single category of

23   information that will be searched."  They ultimately are

24   driving at trying to say that the claim is confined to or the

25   search that would result from a query is confined to searching

1    a single folder, if there were folders, corresponding to a

2    single category corresponding to a single classification

3    label.

4             This clearly cannot be the right construction

5    simply as a matter of law, your Honor.

6             If we could go to -- it's page 11 in mine.  It's

7    the law point.

8             The Federal Circuit has been quite clear that in

9    claim construction -- this might be a little counterintuitive,

10   but in claim construction, the word "a" or the word "and"

11   can mean "one or more;" and it's really not only can be, that

12   generally is the meaning according to the cases, and the

13   exceptions are extremely limited.  There would have to be

14   something clear in the claim or in the specification that

15   advanced an intent to do something different, to make it just

16   a single item.

17            If we go to the next slide.

18            The place to start, of course, is the claim

19   language.  And here, we boxed a couple of important

20   instances.  We've got, right up top, "a" classification

21   label.  It occurs in the defining organized classification

22   of document content element.

23            Then "a" classification label comes up again in

24   automatically categorizing the selected documents.  So the

25   categorizers are going to assign "a" classification label,

1    meaning "one or more," to the document.

2            There is also -- and this is a quite important

3    point.  There is also reference in the "defining organized

4    classification of document content" step to "a category of

5    information."  Again, it must mean one or more under the

6    case law; and defendants have said there is only the use

7    of the phrase "the category of information" in the claim.

8    There is never a preceding instance of "a category of

9    information."

10            Now, that is just incorrect.  It's right up

11    there at the beginning part of the claim.

12            So if we continue to trace our way down, we find

13    that in the automatically formulating step, things kind of

14    come together to coalesce, as the patent says, a query.

15            Here, it says, "automatically formulating the

16    query to restrict a search from the information retrieval

17    system for information concerning the set of entities to the

18    category of information ..."  That refers back to, under the

19    case law, it refers right back to a category of information.

20    So one or more categories of information.  "... in the

21    information retrieval system identified by the assigned

22    classification label."  Again, one or more classification

23    labels.

24            And this all snaps together and makes perfect

25    sense.  At the very bottom, referring to the assigned

1    classification label is plainly referring to what was

2    assigned in the prior step of automatically categorizing,

3    that would be one or more classification labels.

4           And, in turn, the first step in the claim

5    defining the organized classification of document content

6    set out that the organized classification has one or more

7    labels that, in turn, correspond to with each one of those

8    one or more labels corresponding to one or more categories

9    of information.

10          So you have that structure set out at the

11   beginning.  The end references it again, just as here.

12   We've got for each assigned classification label, we're

13   going to have some categories of information.

14          So I think this really -- this combined with the

15   claim -- with the case law, your Honor, I think really puts

16   an end to any debate over whether it's one classification

17   label or one category of information.  It's plainly one or

18   more.

19          And the defendants' principal argument as to why

20   it only had to be only one?  As I said, it says only "the"

21   category of information at the very last step, and there

22   wasn't a preceding "a" category of information, but that is

23   just mistaken.

24          So that, as the Federal Circuit likes to say,

25   claim interpretation begins and ends with the claim

1    language, and I think here we could end absolutely with the

2    claim language.  It's clear right there.  It's "one or more."

3              We don't have to end there, though.  There is a

4    number of things we can look at in the specification.  And I

5    won't bother with the Elmo because we've cited these in the

6    papers, but I counted up, there are seven instances in the

7    specification where it says that more than one classification

8    label can be assigned to a particular document.

9              In column 41, under the heading "Text

10   Categorizer," for instance, it says "the goal of a text

11   classification system such as a text categorizer 3610 is to

12   classify a document 3612 into a set of one or more classes

13   3620, also referred to as categories.  In operation, the

14   text categorizer 3610 assigns a document one or more classes

15   in a set of classes."

16             We couldn't get much clearer than that, but lest

17   there were any doubt, in column 43, as we cited in our

18   papers and looking at line 35, it says, "To simplify the

19   description of text categorizer 3610, it is assumed that the

20   documents 3612 will be assigned to no more than one class.

21   However, it will be appreciated by those skilled in the art

22   that the text categorization method described herein may

23   be readily extended to assign documents to more than one

24   class."

25             So what that is saying is to the extent any of

1    the preceding discussion of text categorizer assumed there

2    was one class, we know it can be extended to more than one,

3    and people skilled in the art would know that, too.

4            And it goes on immediately from there, still in

5    column 43, to describe the problem formally in mathematical

6    terms.  And the problem can be represented, it says, as a

7    text classification system S that assigns a document or body

8    of text class labels -- drawn from a set of class labels.

9    It goes again to talk about, plural, labels.

10           Column 48, at line 46, refers to constructing a

11   query with a set of entities and a set of categories.

12           And below that, it says, "In operation, as shown

13   in Figure 38, the document content 3612, alternatively

14   limited context, surrounding the entity, is analyzed by the

15   categorizer 3610 to produce a set of categories 3620."  And

16   there are some more references in 49.

17           At any rate, there are no fewer than seven

18   instances that I counted.  There might even be more than the

19   specification referring to assigning multiple classification

20   labels to a piece of document content.

21           THE COURT:  Coming back to the claim language.

22   In line 1 of claim 1, query is preceded by the word "a."

23           MR. STARK:  Yes.

24           THE COURT:  Does it mean one or more queries for

25   purposes of the claim?

```
 1              MR. STARK:  I think it does, your Honor.  It
 2   could be one or more queries, that is true.  There is
 3   actually an example in the patent that shows that, too,
 4   which I will come to.
 5              THE COURT:  If it were more than one query,
 6   to make it queries, might that be what accounts for the
 7   multiplicity later in the language?  That is, why should I
 8   not read it as when it's one query, it's one label, one
 9   category, and only when it's more than one query that it's
10   more than one label and more than one category?
11              MR. STARK:  Well, I think, just going from top
12   to bottom -- I have two answers to this.  Going top to
13   bottom, one is the first time you come to "a classification
14   label," the law would say we construe that as one or more.
15   And that that is within the context, as I read it anyway, of
16   how you would generate a query.  Then it could be repeated
17   to generate multiple queries, but each one would have
18   potentially multiple classification labels and multiple
19   categories.
20              I think that the second part of the answer is,
21   of course, back to the specification where it says for each
22   document, several times over, it says there can be multiple
23   categories, multiple classification labels assigned.
24              So I think that is fairly non-controversial from
25   reading the patent as a whole.
```

1          I think that really brings us to the end of the

2     categorizing step.  It seems fairly plain it has to be

3     multiple categories or multiple class labels.

4          I think the next piece of this I'd like to talk

5     about -- and this, Scott, is going to be on page 19 in mine

6     -- is what is a "query."

7          The notion of how many labels, how many categories

8     ties into what is a query and ties in also to the formulating

9     a query step.  And we see here right from the very first line

10    of the claim that the claim is really about generating.

11    "Automatically generating a query," it says.  And then it has

12    some set up and then ends up with "automatically formulating a

13    query."

14          If we can go to the next page.

15          Xerox's construction says that the query is "a

16    set of data specifying search criteria," whereas defendants

17    say it's a "request for search results."

18          I think in some sense we're not that far apart

19    here, but really our notion with our claim construction,

20    your Honor, is to try to stay true to what the claim

21    language is actually talking about, which is formulating a

22    query if it tells you some of the things that can be placed

23    in a query to specify it, to set its scope.

24          It doesn't actually say anything about getting

25    results in the claim.  Therefore, it is not accurate or fair

1  to start importing into the claim construction a notion of

2  results.

3              Now, I wouldn't quibble with the notion that for

4  most intents and purposes, the reason one would formulate a

5  query would be to go off and do a search and have some

6  results provided somewhere, but it doesn't necessarily

7  follow.  One could formulate a query and put them in a

8  window and let someone click on them if they wanted to run

9  them, for example.  One could formulate queries, send them

10  off to have a search done and have the results passed on to

11  some other part of your system.  Maybe they don't actually

12  -- it's not a request for results in the sense that the

13  results being returned to the entity or the person or

14  routine that did the requesting.

15              So that is sort of where our difference lies

16  there.  It's just on this question of results and whether it

17  is appropriate to focus on results as the defendants do.

18              THE COURT:  Is there anything about your

19  construction that precludes there being results?

20              MR. STARK:  There could be results or not be

21  results.  In most cases, presumably there would be, but it's

22  just not required by the claim.

23              We believe, your Honor, that our construction is

24  quite consistent with the claim language and consistent with

25  the specification as well.  The claim, of course, as I

1    pointed out, talks about generating a query or formulating a

2    query.

3            If we go to the specification -- turn to 22 now

4    -- the specification tells us that the query generated --

5    this is in column 48.  The query generated may include some

6    or all of the following elements ...: (a) a set of entities,

7    (b) a set of categories, and then (c) an aspect vector and

8    (d) the category vocabulary.  Of course, the claim references

9    (a) and (b), entities and categories.  I'm referring to

10   claim 1, also to claim 18.

11           Some of the dependent claims talk about aspect

12   vectors and category vocabulary.  So those come up in

13   dependent claims.

14           This column 48 I think best reflects embodiment

15   of what is in the claims.  It says, we're going to generate

16   a query.  It's going to have these kinds of things in it,

17   (a) and (b).  It may contain some more things because this

18   is an open-ended claim, but according to the claim, it's

19   going to have a set of entities and the one or more

20   categories or classification labels.

21           The issue then that we have with the defendants'

22   construction with its focus on search results is ultimately

23   the claim construction is something that is going to inform

24   jury instructions.  It's going to give the jury a standard

25   for what they have to find in order to find infringement or

1    to find anticipation, for that matter.  It's really I think

2    misleading to the jury to import this focus on the results

3    into the claim because, as I said, it's not in the claim.

4    The claim doesn't refer to results.

5         The defendants' primary evidence that they call

6    upon to try to bring results into their construction are

7    actually claims 11 and 17.  Claims 11 and 17 do mention

8    results, but those are dependent claims, they're not asserted

9    by us in this case, so they're really quite irrelevant.

10        I just point out that 11 depends from 10, which

11   depends from 1.  Claim 17 depends from 16, which ultimately

12   chains its way back up to 14, which is an independent claim

13   which is also not asserted in this claim.

14        But claims 11 and 17 are the claims that refer

15   to results.  It is actually even worse for defendants'

16   argument than merely being irrelevant.  Under the Federal

17   Circuit's claim construction law, when a dependent claim

18   references some elements that are not in the independent

19   claim, the inference is the independent claim is not meant

20   to have those elements in it.  It is unstated as to the

21   independent claim as to whether the dependent claim elements

22   are there.  It might be there, it might not be there, but

23   they're certainly not required if they're found only in

24   dependent claims.

25        The results are found in dependent claims,

1    therefore, not required by claim 1 or claim 18 or frankly

2    any of the other dependent claims that we have asserted that

3    are not the ones that have results in them.  Therefore, it

4    would be quite misleading to the jury, we submit, your

5    Honor, to import the idea of results into the notion of

6    what a query is.

7            It might cause them to focus really on, when you

8    are going to search, how do you perform the search, and what

9    exactly do you get back, and so forth, all of which is

10   really outside this claim.  The claim talks about a set of

11   query with a certain scope to it or some attributes to the

12   query.  Exactly how that query is responded to or implemented

13   by some underlying system is beyond the scope of this claim.

14   It could be a variety of ways of implementing a search.

15           That takes us then, your Honor, to the last

16   step in the claim.  This is the "automatically formulating a

17   query" step in the claim.

18           Now, here, I think to a certain degree the

19   parties have kind of been like ships passing in the night in

20   a sense.  We've addressed this step of the claim pretty much

21   as a whole whereas the defendants have -- their proposal was

22   "to restrict a search at the information retrieval system

23   ..." and so on through the label and just look at that piece.

24   It divorces the formulation of the query a little bit from,

25   and takes it a little bit out of context, and not properly

1    so.

2              Our view of this, your Honor, is the claim

3    language clearly says that the search scope is going to be

4    restricted.  It's to restrict a search.  I don't think we

5    have any dispute, any ambiguity that anyone has identified

6    as to what "restrict" means.  The defendants would like to

7    substitute another word for "restrict," but they haven't

8    said there is something ambiguous about "restrict."  They

9    haven't said there is a basis for using the word "confine,"

10   which is their proposed word for "restrict."  That is sort

11   of where they're coming from is simply to say, well, let's

12   put in the word "confine," and it ties into their argument

13   that says, well, there must be -- this all must be about

14   doing a search that is ultimately, in its implementation,

15   limited to one classification label, one corresponding

16   category of information, and then they would go right down

17   the implementation in the embodiment of the patent to say,

18   well, that means you're confining the actual search in

19   response to the "formulate a query" to one folder in a

20   directory structure, I suppose, a file structure, and we're

21   only going to look there, and then try to make that really

22   the endpoint of where they're going with this.  So we're

23   going to confine the search to one folder.

24             Well, all they did with folders is merely an

25   embodiment, merely an example here.  None of that is

1    mentioned in the claim; and the Federal Circuit has told

2    us many times that it's incorrect to use embodiments to

3    restrict the scope of the claims.

4                 As we discussed, the claim language doesn't

5    support saying we only have one classification label or one

6    category.  So that is incorrect as well.

7                 And "confine" is not -- I don't think it's

8    appropriate to take a word like "restrict" as to which no

9    one has identified any ambiguity and simply say, well, they

10   like the word "confine" better so we're just going to switch

11   it, put a different word in there.

12                I think it's all directed at coming up with a

13   construction that will lead the jury in the direction that

14   the defendants want to go, which is to say this all has to

15   be limited to searching in a folder; but that is really not

16   appropriate.  It's not proper claim construction.

17                THE COURT:  So, first of all, you don't agree

18   that the claims are limited to searching in a single folder;

19   correct?

20                MR. STARK:  That is correct.  We do not agree

21   with that.

22                THE COURT:  So help me understand what you do

23   agree is restricted.  As you say, there is a restriction, so

24   what, in your view, is the restriction?

25                MR. STARK:  The restriction, your Honor, is

1    that the query is formulated with both entities and with

2    classification labels as a result of categorizing the

3    document; and, as the claim says, that restricts the scope,

4    restricts the search.

5              In operation, that could be implemented in a

6    number of different ways.  It could be implemented by

7    searching in only some folders.  It could be implemented

8    by searching broadly but only returning elements that --

9    responsive documents that meet the criteria specified in

10   the claim.

11             It would not be met by saying, well, that's fine

12   if we have, you know, "seven-up" and "genetics" as our query.

13   It wouldn't be met by saying well, we'll go search for

14   anything that has "seven-up" in it and anything that has

15   "genetics" in it and put all those things together.  We're

16   going to get "sodas," we're going to get "fruit-flies," all of

17   that.  That would be broadening.  It's not talking about that.

18   It's talking about using the classification labels to narrow,

19   to restrict the scope of the search.

20             That is as much as the claim tells us, quite

21   frankly.  And, beyond that, how exactly the search is

22   narrowed or restricted in response to the categories, the

23   classification labels having been put in this query is left

24   unstated as far as the plaintiff is concerned.  That would

25   be a particular implementation or embodiment issue.

1          THE COURT:  You have mentioned several times the

2    jury, where this may ultimately end up, and, of course, the

3    Court would use its claim constructions to write the jury

4    instructions.  Your proposed language here, at least

5    grammatically, seems a bit odd.  It's hard for me to

6    envision how I would use your construction to write jury

7    instructions, at least if you intend what you propose to

8    actually be a substitute for the yellow highlighted language

9    there.

10         MR. STARK:  Well, fair enough, your Honor.  I

11   think the defendants had pointed out here, we didn't have

12   our verb in there in place of "restrict."  I don't think,

13   frankly, we need a verb in place of "restrict" because your

14   Honor is free, of course, to, and I expect would, use the

15   claim language as part of instructing the jury.  The claim

16   itself says, "automatically formulating the query to

17   restrict," so I think "restrict" goes in the instructions to

18   the jury no matter what.  I think that "restrict" doesn't

19   require any further interpretation.  I think it's clear

20   enough, and perfectly clear in fact.

21         Also, we noted in our papers that if your Honor

22   felt there was some need to add something to what we had

23   proposed in order to take care of that problem, there is an

24   additional sentence we had put in our papers, something like

25   "adding the classification labels restricts the scope of the

1    query" or some words to that effect.  They were in our

2    paper, in our response paper, and I think certainly that

3    takes care of that issue.

4              To us, the word "restrict" didn't jump out as

5    something that needed clarification.  What the bulk of that,

6    really the entire step is talking about is how do you

7    formulate the query?  What goes in it?  So that is what we

8    had addressed in our claim construction.  But I think if

9    your Honor felt something additional was needed, I think

10   that is fairly straightforward to resolve.

11             In terms of this issue, does it really require

12   searching a single folder?  Is there anything in the

13   specification about that?  I refer your Honor to column 49.

14   First of all, I would say the defendants relied very heavily

15   on Figure 39.  That's, of course, said in the specification

16   to be only an example and an embodiment.  The Federal

17   Circuit tells us not to use examples or embodiments to

18   restrict the scope of a claim.

19             The specification also says in reference to

20   Figure 39, as we noted in our papers, that the point of what

21   is going on is to focus the search.  It doesn't say that the

22   claim has to be restricted to or confined to just a single

23   folder.

24             In column 49, there are also some alternate

25   embodiments discussed; particularly at 49, lines 37 to 39.

```
 1    The patent says, "in an alternate embodiment, the
 2    classification labels are appended to the terms in the
 3    aspect vector, to formulate a more precise query."  The
 4    aspect vector having been mentioned as a piece of the query
 5    a few lines above that.  And it says, "Adding terms to the
 6    aspect vector adds constraint to the query, limits the
 7    search to a set of nodes and/or subnodes in a document
 8    categorization structure.
 9              So that is another take of another possible
10    embodiment that wouldn't in any way be limited to a single
11    folder.
12              And in column 51, there is a discussion of
13    Figure 40.
14              We'll try the Elmo again.
15              Figure 40 is said to be an example, again, an
16    example of the embodiment which would be non-limiting but it
17    is illustrative.
18              Figure 40, if you follow the flow, it says you
19    start at 4002, extracting entity from document content and
20    added entity to query.  Then categorize the content,
21    generate the category vocabulary.  Then locate node in
22    category organization corresponding to document category.
23              Locate node searched with query if you haven't
24    searched this node before.  If not, it then goes search that
25    node.  Then the rest is check the results to see if you got
```

1    good enough results.

2             If the answer is you didn't get good enough

3    results, you're going to go next to the query essentially

4    and recheck the node and then, ultimately, it's going to go

5    up to, work its way up the hierarchy of the classification.

6             So it will start at a leaf node.  If you think

7    of the classification or categorization as a tree, nodes at

8    the very bottom are leaves, it's going to start with the

9    leaf node and then it's going to go and work its way up to

10   the parents of the leaves, and then the parents, and then

11   the parents, until it gets potentially to the root node at

12   the very top of the tree and make a search there.

13            So what this is showing is it iteratively, in

14   this example, iteratively is going to show queries to search

15   more and more broadly as it goes along but it's focused by

16   starting with the leaf and then going to some subcategories

17   that encompass the leaf and so on.  So it works its way up

18   to broader sets of information.

19            But that is plainly not searching just a single

20   folder.  That is searching iteratively in broader spans of

21   folders.

22            So, your Honor, that I think brings us to the

23   end of what is really the crux of the dispute here, which

24   is this, it's all this stuff about our searching a single

25   folder.  Are we using a single classification label?  A

1   single category?

2          Defendants are trying to drive all this in the

3   direction of saying it's all a single category, a single

4   classification label, a single folder.  You have to confine

5   your search to the single folder and only return what you

6   find in the single folder, and that's what the claim is

7   about.

8          That's just not what the claim is about, your

9   Honor.  It's about generating a query, formulating a query

10   that has certain characteristics to it, and that will

11   restrict the scope of the search, and exactly how that

12   restriction is implemented is outside the framework of

13   this claim.

14          THE COURT:  Your proposed construction also uses

15   the phrase "data items."  I wasn't quite sure where that

16   came from.

17          MR. STARK:  "Data items" is a pretty

18   conventional term in computer science and computer patents

19   just to refer to some piece of data.  An entity would be a

20   data item.  A classification label could be a data item.

21   Any little piece of data could be a data item.  We're not in

22   any way wed to the term "data item."  It's a pretty

23   non-controversial term that occurs in dictionaries and lots

24   of references.

25          With that, those crux issues covered, your

1      Honor, I'd like to turn just to the two remaining issues,

2      the first of which has to do with the classification label.

3                    I need to switch inputs.  Thanks.

4                    We can go right to the construction on slide 15.

5                    So what this has kind of boiled down to is I

6      believe just a dispute about what is the format of the

7      label?  The claim language, of course, doesn't say anything

8      about format.  It just says you have a classification label.

9                    The defendants want to say it was classifying a

10     word or phrase.

11                   It doesn't say anything in the claim language

12     that it has to be a word or a phrase.  What the defendants

13     cite to support this primarily is general dictionary

14     definitions.

15                   You can go to the next page.

16                   There is little, if anything, to rely on other

17     than extrinsic evidence.  For example, these dictionary

18     definitions where they're talking about a label in the sense

19     of an epithet or a label in the sense of a piece of the

20     dictionary definition or something to do with a newspaper

21     headline is just not relevant to anything we're talking

22     about in this patent.

23                   The Federal Circuit 's guidance in <u>Phillips</u>, of

24     course, downgrades very much on dictionaries.  It's cautions

25     about that.  It's okay to refer to dictionaries but, in

1    particular, it cautions about referring to general

2    dictionaries really for just this reason.  There is a lot of

3    definitions in general dictionaries often not relevant to

4    the art and to the invention in the patent.

5              If we turn two pages on to the computer

6    definitions.

7              The IBM Computer Dictionary of Computing defines

8    a "label" as "an identifier within or attached to a set of

9    data elements."  It's just an identifier.  It doesn't say

10   what kind of format it has to have.

11             McGraw-Hill says "a data item ..." -- there is

12   that term data item.  It turns up in a number of places --

13   "... that serves to identify a data record ..."

14             Again, no suggestion of format.

15             I submit it is quite -- well, it's quite well

16   known as a matter of just common sense that a label could be

17   whatever is convenient, particularly whatever is convenient

18   to the system you are working with.

19             We gave the example of the Library of Congress,

20   Dewey Decimal System.  Those are classifications that have a

21   series of labels.  The Library of Congress has a label,

22   series of numbers, and you can go to the stacks.  I'm not

23   sure anyone goes to stacks anymore, but in my day you used

24   to go to a stack and you would peruse the books, and you

25   would look for the little label on the side that said K

1     something-something, and that would help you identify a book

2     in the category of information that you were looking for.

3                    That is just what is meant by a label.  It could

4     be a word.  It could just be some alphanumeric identifiers.

5                    In computer, it's for sure going to be bits at

6     the end of the day.  That is all anything that is in a

7     computer is just bits.  Even if it were characters that

8     represent the label, those are represented by bits in the

9     computer.

10                   So we would submit, Your Honor, there isn't

11    really, at all, any basis for putting any format restriction

12    on what a classification label is.

13                   The specification also doesn't say anything

14    about format.  It does say in the mathematical piece that I

15    referenced earlier, in column 43, it refers to labels as

16    values in a mathematical set.  That is a pretty abstract

17    concept.  It really could be anything to fit that definition.

18                   To be sure, in Figure 39, which defendants rely

19    on very heavily, each of the nodes in the tree shown in that

20    figure has words in it.  But this is a conceptual diagram.

21    This isn't saying this is literally what is going to be in

22    the computer.  The computer is not going to have a chart

23    with lines or boxes.  Nor is it necessarily going to have

24    English letters in there.  It's going to be bits and bites,

25    data structures that represent this.

1          And as far as a computer or program is

2     concerned, if I have a number that relates to genetics, for

3     example, if I have a table that tells number 37 is genetics

4     or is a pointer that points me off to where I have stored my

5     information about genetics, that is perfectly sufficient in

6     the context of a computer.  Just the fact that a diagram has

7     been made readable for humans by putting words on it doesn't

8     mean that the labels have to be words.

9          THE COURT:  The defendants seem to distinguish

10    between a label and a mere identifier.  Help me understand

11    why that is not a problem for you.

12         MR. STARK:  I'm not sure how they distinguish --

13         THE COURT:  They make an argument that when it's

14    numbers, perhaps you're just identifying a particular piece

15    of data and somehow that is not a label.

16         MR. STARK:  Oh, yes.  This goes to their use of

17    the term "classified."  It has to be a classified word or

18    phrase.  And this, I should have mentioned this.  I'm sorry,

19    your Honor.

20         This is really off-base in terms of what the

21    claim says.  The classifying is done using the organized

22    classification of document contents.  You take a document

23    and it's compared to by whatever means it's compared to, the

24    organized classification, to figure out what class or

25    classes it falls into.

1           The classification label is just, following

2   the logic of the claim, it's just an identifier that is

3   associated with the class.

4           If I had my fruit-fly document ends up in a

5   class genetics, all I need is a label.  All the computer

6   needs is a label to say this is in this class, genetics, and

7   then to make that class correspond to this category of

8   information, and the information retrieval system.  It's

9   just kind of a go-between.  It really is literally just

10  like the idea of the Library of Congress call letters or

11  something like that.

12          The label doesn't do any classifying.  It's just

13  to establish the correspondence between classifications and

14  categories and to have something to put in the query.  It

15  can be whatever the search engine needs by way of a label to

16  say, oh, I can make that correspondence, too.  I know if you

17  put 37 in for a classification, that is genetics, so focus

18  on that.

19          That takes us, your Honor, lastly to the "order

20  of steps."

21          Now, here, the constructions are a little wordy.

22  Essentially, I think the starting point is the law which

23  says in a method claim -- and that is what we have here --

24  the steps have to be written in the claim in some order,

25  because that is just the way we write things on paper.  But

1    that doesn't mean that the steps have to be performed in

2    that order absent something in the logic of the claim or

3    some clear guidance in the specification that says you have

4    to perform things in some order.

5              The presumption is the steps are not ordered.

6              The defendants want to say that step (a),

7    defining the organized classification, has to come before

8    (c) and (d).  And, actually, we agree with that because you

9    have to have an organized classification of document content

10   in place before you can ostensibly do the categorization or

11   formulate a query.

12             Then they say step (b), extraction of entities,

13   has to be performed to completion before you do step (d),

14   which is to formulate a new query.  And, likewise, Step C,

15   the categorization, has to be performed to completion before

16   you get to step (d), the formulation.

17             Now, both sides are really, largely in our

18   papers, arguing based on what makes sense reading the claim.

19   The defendants are simply asserting, well, it makes sense

20   to complete all the collection of extraction entities and

21   categories before you go on to formulate a query.

22             Our view is, in a strict logical sense, that is

23   not required in order to be able to formulate a query; and

24   the claim doesn't say that you have to have all the entities

25   or all the categories before you start formulating a query.

1          There is nothing in the claim, for example,

2     that prohibits, well, let's get a set of entities, let's

3     do that iteratively, and as we get one, we will pass it on

4     the formulator and it is put into the claim.  That is for

5     the query.

6          Similarly, with the categorization, that can be

7     done iteratively, pass them on.  As you get them, they are

8     added to the query.

9          And there are three bits of specifications

10    support for this as well.

11         If we go back, Scott, to one of the first slides

12    we has was Figure 38.  It was on page 5.

13         So Figure 38, your Honor, is described in the

14    specification as illustrating the flow of information.

15    Basically, the process for how a selected document content

16    gets processed.  So entities are extracted and categories

17    are discerned from it.

18         What is interesting about this figure is there

19    are two arrows coming out of the document content 3612, one

20    to the entity extractor and one to the categorizer.  What

21    this really suggests is a parallel flow, suggests that these

22    two things may be going on simultaneously.

23         If one were going to illustrate this goes step

24    by step, one would have drawn a different diagram, it would

25    have said, well, we'll have the box that says entity

1    extractor, and we'll have another box sequentially that says

2    categorizer, and we'll have another box below that that says

3    now do the formulating.

4            What is illustrated here is actually a parallel

5    flow of information simultaneously from 3612 to the entity

6    extractor and to the categorizer, and then the entity

7    extractor sends an entity -- of course, we know it can be more

8    than one entity.  It shows here one going to the category

9    generator, the category going to the category generator, and

10   the query being formulated as a result of that.  But that is

11   one bit.

12           There is also, in column 48, it talks about,

13   at the bottom of the column, about the formulation of the

14   query.  It says in one embodiment, the query generator 3810

15   -- and you see that on the screen here -- coalesces these

16   four elements; i.e. entity 3808, category 3620, aspect

17   vector 3822, and category vocabulary 3621; to automatically

18   formulate a query.

19           Then it's an interesting choice of words there,

20   "coalesce" which means to unite as a whole or to arise from

21   a combination of distinct elements.  It has that connotation

22   to it.  It invokes a sort of sense of simultaneity that

23   several things are coming together at one time or over time

24   to be joined into or united into a whole.  It doesn't say it

25   will first, get all the entities, then let's get all the

1    categories, then we will paste them all together into a query.

2         The last, perhaps most important, bit of the

3    specification is column 75.  Column 75 talks about the

4    computer system in which the invention can be implemented,

5    and, specifically, says that it can be a system with

6    multiple processors.  It can have indeed multiple computer

7    systems all ganged together to work on the problem altogether.

8         I think it's fairly plain if you had multiple

9    computer systems working on this, it would be pretty routine,

10   pretty commonsensical to say, well, we could have one doing

11   the extraction of entities, we could have another computer

12   system doing the categorizing of the documents so we get the

13   benefit of speed up by having parallel processing.  And as

14   those things are producing results, we'll pass them on to

15   yet another computer system or processor to assemble or

16   formulate the query.

17        That is absolutely a routine way to think about

18   things in the computer world.  We've got multiple processes,

19   or multiple processors, or multiple computer systems.  Let's

20   have them each -- let's break up the problem and have them

21   each do a piece of it and put them together.  That is why

22   one would talk about having multiple systems as it does

23   here.

24        The last little piece of this is the question of

25   whether the step of claim 2 has to be performed during or

1    after the completion of step 1 or does it have to be -- or

2    is it the case, as the defendants say, that all of claim 1

3    has to be performed before you go to step 2.

4          And, again, the claim does not in any way say

5    that you have to get to the end of the completion of step 1

6    and only then, once we have got fully formulated queries for

7    claim 1, do we go and add the additional information from

8    claim 2.  You are adding terms from the context around the

9    entities.

10         It doesn't say that anywhere in the claim here.

11   In fact, if we go to the next slide, the specification says,

12   it reads this way:  "Document classification labels define

13   the set of categories 3620 output by the categorizer 3610.

14   These classification labels in one embodiment are appended

15   to the query 3812 by query generator 3810 to restrict the

16   scope of the query (i.e., the entity and the context vector

17   3822)."

18         So, here, "context vector" is the specification

19   term for these added terms that are referenced in claim 2.

20   So what this is saying we've got a query that has an entity

21   or has these, and context vector, the information from

22   dependent claim 2.  Now we're going to add to that the

23   classification labels from claim 1.

24         So the ordering that the defendants are trying

25   to impose on claim 1 to claim 2 is clearly inconsistent with

1    the specification.  I would submit that that just further

2    shows that their overall attempts to impose ordering on

3    the steps is not contemplated in the specification.  It's

4    contemplating coalescing, putting things together, possibly

5    it has them in frankly whatever order makes sense for the

6    implementation.

7              That, your Honor, is the last of the issues on

8    claim construction.

9              I think just to review the principal issues,

10   these last ones are not as important.  The principal issues

11   are the indefiniteness issue where the defendants have

12   claimed that there is a lack of antecedent basis.  That is

13   clearly not the case, it is not a lack of antecedent basis

14   case, and the specification clearly shows what the selected

15   document content is.  There is really no ambiguity there.

16             And then on the whole issue of does the search

17   have to be limited to essentially all the way down to a

18   single folder is not at all what the patent is talking

19   about.  It's talking about a query that may have one or more

20   classification labels, or define one or more categories of

21   information, and the scope of that query is restricted.  How

22   the implementation works from there, whether it's down to a

23   folder or to multiple nodes or some other means of

24   restricting the query, that is just beyond the framework of

25   this claim.

1           Thank you very much, your Honor.  I reserve

2     whatever time I have left.

3           THE COURT:  Okay.  You may do so, and we'll hear

4     from defendants.

5           MR. STARK:  Thank you.

6           MR. HORWITZ:  Your Honor?

7           THE COURT:  You may.

8           (Binders passed forward.)

9           MR. PERLSON:  Okay.  Now, I have it figured out.

10          THE COURT:  Okay.

11          MR. PERLSON:  Your Honor, I think we'll be

12    taking the terms at a slightly different order, as was the

13    case in our brief.  We will start off with the "restrict to

14    search ... to the category ..." limitation, which I think

15    we've stated for some time we think is the critical

16    limitation in this case.

17          It's important that it's not just to restrict a

18    search in any way, it's to restrict a search to the category.

19          There is really two disputes involved with

20    this phrase.  Several times throughout the presentation,

21    plaintiff had tried to sort of put these together and

22    suggest that our construction of this term and the assigned

23    term, that the dispute is about one or more categories or,

24    you know, whether one or more should be assigned or whether

25    it should be restricted to one or more.

1        We do agree that the search needs to be restricted

2   to a single category, that it supports that.  But there is a

3   separate issue here as to what it means to restrict the search

4   to the category.

5        So we say, we provided language that it means

6   that the search is confined to the category; and plaintiff

7   has a construction that doesn't really account for restrict

8   at all and kind of uses this "include" language.

9        Now, obviously the place to start here is the

10  claims.  We think that the claims are pretty clear.  That

11  the only reason we're here is obviously there is litigation

12  and there is a dispute regarding this phrase, so we wanted

13  to provide a construction that we thought would make sense

14  and help the jury.

15       But if you go through the element at issue here,

16  "automatically formulating a query," it's done "to restrict

17  a search at the information retrieval system."  So the

18  purpose of formulating the query is to restrict a search at

19  the information retrieval system.

20       Now, the element provides a couple things.  It

21  provides a "what," which is what are you searching for?

22  Well, that is information concerning the entity.

23       It also provides a "where."  It says where

24  are we going to be searching at the information retrieval

25  system?  Well, we're going to be searching -- it's going to be

1    restricted to the category of information in the information

2    retrieval system.  So it has to be restricted to just that

3    category of information.

4              The information retrieval system would have a

5    large set, and it's organized by categories, and the search,

6    you are going to search for the information concerning that

7    set of entities in that category that is identified by the

8    assigned classification level in the prior step.

9              Now, we provided definitions that support our

10   "confined to" language.  These are the few that we included

11   in our opening brief.

12             Xerox cited some dictionary definitions, too.

13   And we would submit, your Honor, that they support us as

14   well.  For example, Webster's Third International Dictionary.

15             This is on slide 7.  It says "restrict:  To set

16   bounds or limits to:  hold within bounds."

17             Then there is another one from the Cambridge

18   Dictionaries Online that is consistent with our construction

19   as well.

20             Now, Xerox's response here is saying that we're

21   switching -- there is no reason to switch "restrict" with

22   "confine."  But Xerox, their definitions don't have

23   "restrict" at all.  In fact, I think that plaintiff even

24   conceded that.

25             He said we took issue with the fact that they

1    didn't use the verb "restrict" or something like it.  Well,

2    we do take issue with that, and this language does need to

3    be in the claim.  And whether it's "restrict" or some other

4    very similar term, it has to be -- the jury needs to know

5    that this is a limitation, and it needs to be given effect.

6    We would submit that the language that Xerox has chosen is

7    specifically part of an attempt to eliminate any restriction

8    whatsoever.

9         THE COURT:  But their concession today is that

10   at least the word "restrict" needs to remain in the claim.

11   Is there any significance at this point whether it's

12   "restrict" or "confine?"

13        MR. PERLSON:  Well, I think so.  Well, I'm not

14   sure what that concession meant, frankly.  Because, sure,

15   the word is in the claim; right?  The word is there.  You

16   are not going to give an instruction that is going to erase

17   the limitation from memory, but you are going to provide the

18   jury with a construction that says what this means, what

19   this phrase means.

20        What Xerox is suggesting is that this limitation

21   means what is on the right.  "Restrict" is not in there.

22   And that is how the jury is going to look at it.  I mean

23   that is what they're supposed to do.  And so by eliminating

24   -- by just saying, oh, we agree that it's "restrict a

25   search," that is not really helpful to anybody.  That is not

1    going to be helpful to the jury.

2            And I think an important point here -- let me

3    just jump here a little bit -- is to address your point

4    regarding this concession.  And I think that one of the

5    problems with it is that it allows for this:

6            They say that, sure, we have "to restrict a

7    search."  But then when you asked them what that meant, he

8    kind of went on this long series of examples and none of

9    those seemed -- you know, they didn't seem to be restricting

10   a search to me.  Instead, it seems to allow for this.  This

11   is kind of a representation.

12           In the patent, there is a query.  And it's, you

13   have the category of information identified by the assigned

14   classification label.  And we have here noted in yellow the

15   categories that would be searched.  The patent would talk

16   about you would restrict the search to that area with the X.

17           Xerox's construction allows for the search to go

18   way beyond that.  You are searching the whole thing.  And

19   that seemed to be precisely what plaintiff was arguing in

20   connection with their construction.

21           Now, I think it's important to go to the -- we

22   think that the claim language itself is clear enough on its

23   own and that you really could end the inquiry there, but we

24   have a specification and Phillips says we should look at it

25   to assist us in this process, and the specification fully

1    supports defendants' construction.

2              Here, we have Figure 39, and it explains that

3    the search is focused on documents found in the single node

4    of the document hierarchy genetics 3910.  That's the

5    genetics in the bottom right there.  And the other nodes

6    such as arts, TV, food science, those aren't searched.  And

7    you can see that by the query that is below.

8              The query shows that, there is a "cat=" and then

9    what follows are the categories, science, biology, genetics.

10             One thing to be clear, your Honor, there are

11   three classification labels there; science, biology,

12   genetics; but that's just a path to the single node

13   genetics.  So it's not by setting up that query that you

14   would be searching all of science.  You are only searching

15   a portion of science that is in the genetics node.

16             Now, Xerox says that we're trying to limit the

17   claim to a single embodiment.  And that is just not true.

18   We're not trying to limit the claims to the spec or import

19   a limitation from the specification.  We think the plain

20   language is consistent with our construction, and we're just

21   pointing to the specification as reinforcement of that.

22   There is nothing we need to import to get the restrict to

23   the category limitation in the claims.  It's already there.

24   And it's not just a single embodiment.

25             Figure 40, which plaintiff went over in its

1    presentation talks about it, and this restriction.  If you

2    see, it refers to the fact that, at 4007, you have a

3    particular category that is identified in the organizational

4    structure.  And then, if that node hasn't been searched,

5    then that query as it is defined is directed to the located

6    node in the category organization.

7              Here we go again.  We're going right to the

8    node.  The category is restricted to that node, that is

9    what we're talking about here, and it matches up with the

10   limitation at issue here.

11             Now, plaintiff went through this slide as somehow

12   supporting that this limitation allows for multiple categories

13   or that it's not restricted in some way to categories.  And I

14   think that the presentation wasn't completely accurate to what

15   is really going on.

16             These other steps on the other side of Figure

17   40, they correspond to the dependent claims.  And if you

18   note, it says, after you -- you see, you direct the query

19   to locate a node, and then you obtain results.  But if you

20   don't retain -- you see where you retain results.  And if

21   you don't, then there is a loop and it goes back, and then

22   you might go up the node and run the search again.

23             But if do you get results and they're not

24   accurate, then you go on to look at this aspect vector.

25   That's what claim 2 is talking about here.

1              And then it talks about how you would build

2    this.  And then when you have this automatic query, you run

3    it again.

4              Then there is also another path where you might

5    use a category vocabulary.

6              Every single one of these come back to this same

7    scheme in Figure 40 where you have directed a query to the

8    located node.  Every single time.  So even after you -- even

9    when you are doing these dependent claims, after you have

10   done a claim 1 and it didn't work, you are still going back

11   to that node.

12             The specification explains that this whole

13   ontology is set up so you can do this type of directed

14   search that is confined to a category.

15             This is on slide 17, referring to column 40:65

16   to 41:4.

17             It says that this ontology permits the

18   specification of document service requests to take place at

19   different levels of the entity-type hierarchy.  So it's in

20   these little nodes here.  That's the whole point.  That's

21   the reason why you are defining the ontology in the first

22   place, which is the first element of the claim.

23             The specification also gives an example of how

24   search engines, like at Google, you would limit your search

25   to a single category.  This is on slide 18.

1    It says that "the searches performed by services

2    will be limited to specified categories.  That is, searches

3    performed by a selected service can be limited to a specified

4    category in the information provider's directory (e.g.,

5    Google)."  And it gives an example of how your search would

6    be limited to people, the people category.

7    That is what the patent is talking about as far

8    as restricting the search to the category.  You are doing

9    the search, and you are confining it to that category.

10    We went and looked on the Way-Back Machine,

11    which allows you to see what web pages used to look like,

12    and Google's description of their category search at the

13    time is right in line with what the spec said.

14    It says that, "Google's directory engine also

15    lets you search within a category ..." and it gives an

16    example.  If you wanted to search for Cougars, and you

17    wanted to only search for a college basketball team Cougars

18    rather than across the entire web, and in doing this, it

19    specifically points out the difference between a category

20    search and a web search.

21    When you search in the Google directory, only

22    the category you are currently in will be searched.  That is

23    different a from a web search, a normal keyword search,

24    where if you put in Cougars and basketball, it would search

25    the whole thing.  This is related to that chart that I

1    showed earlier.

2              But, you know, still more.  Prosecution history.

3    There, the claims are rejected over the Rennison reference,

4    and Xerox says Rennison expands the terms of the query, but

5    our patent, we formulated query to restrict a search.

6              They didn't say this once.  Here is two more --

7    and that is slide 21 -- that we include in our brief

8    where they say it.  They can't come in here now after

9    representing to the Patent Office that this restriction is

10   what distinguishes it from the prior art and seek the broader

11   construction.  Yet, that is precisely what they are doing.

12             Now, they try to get around this, what they said

13   in the prosecution history by representing to the Court that

14   during prosecution, they did not stress the "restrict" element.

15             That is not a credible statement, your Honor.

16   In the brief, they call it out in one of the headings, and

17   they italicize it six times in that brief.  Clearly, this is

18   something that they placed a lot of emphasis on it.

19             Now, they say in their brief, they mention it

20   today -- in fact, I'm not sure that we saw this at all

21   today.  But they say that the examiner didn't rely on it so

22   it doesn't matter.

23             Well, first of all, we didn't know whether the

24   examiner relied on it or not, but even if he didn't, that is

25   not relevant as a matter of law as the Laitram case says

1    here on slide 23.

2              So here, additionally, the inventors.  We took

3    the inventors' depositions, and we asked them.

4              We said:  What does it mean with when you have

5    the search like in 39 where you have this category?

6              He said:  Well, at Google, it would access the

7    documents that are in the class top/science/biology/genetics.

8              We asked him:  How is this different from a

9    normal keyword search?  What if we just, in Google, did

10   seven-up and science and biology and human genomics?

11             And he said:  Well, that would just be the

12   normal again keyword interface to Google.

13             And, again, that is something different.  That

14   is a totally different functionality, and that is not what

15   the patent talks about.

16             Inventor Shanahan.  He said, too, that the

17   search would not be restricted to a category if even a

18   single retrieved result fell outside that category.

19             Now, plaintiff has pointed to the Howmedica case

20   that the intent of the inventor is not relevant, but even

21   that case says that inventor testimony is relevant to how

22   particular terms would be understood in the art.  That is

23   precisely how we're using it.  In fact, Xerox, elsewhere in

24   its own brief, relies on it.

25             Now, here we have Xerox's construction on slide

1   28, and "restriction" isn't there at all.  Actually, at this

2   point, that doesn't seem to be in dispute, and it just talks

3   about what the query might include.

4           But this really goes to only the "what."  It

5   says nothing about the "where."  Restricting the search,

6   what does that do?  Basically, it's irrelevant in their

7   construction.

8           We already talked about this.

9           And this sort of goes to their point about how,

10  in the briefs, that the claims only specified what the query

11  contains, not how it interacts with the information retrieval

12  system, but that is not what this patent is about.

13          The point of formulating the query is to

14  restrict a search at the information retrieval system to the

15  category.  I mean that is what the claim language says, and,

16  in fact, during prosecution, this is on claim 30, and we

17  cite several places where they said this.

18          They said that, "In formulating the query, the

19  query generator restricts the search at the information

20  retrieval system to the category of information in the

21  information retrieval system identified by the assigned

22  classification label."

23          So they're saying, by doing this, by formulating

24  the query this way, the search is going to be restricted.

25  So it is absolutely part of the claim and the intention of

1    the claim to have an effect on what is going to be done at

2    the search engine.

3              Now, they say we pointed out a "straw-man" and

4    that they didn't intend to include a search where you would

5    have an either/or.  But whether they argued for that or not,

6    it does.  It absolutely allows for an either/or query.

7              Here is a query:  Seven-up or genetics or

8    beverages.  It includes entities.  The entity there is

9    seven-up.  And it included classification labels, genetics

10   or beverages.

11             That fits within plaintiff's construction.

12   Whether they argued that it should or shouldn't, it plainly

13   does.

14             And, really, this is in our brief as well.  They

15   basically sort of rewritten the claim to say automatically

16   formulating the query to concern the set of entities and the

17   classification label.

18             But, again, this just addresses the "what."  The

19   search in the claims is not just a search for information

20   concerning the set of entities and the category.  It's a

21   search concerning the entities that is restricted to the

22   category.  That is really critical.

23             It was mentioned in a footnote and briefly

24   mentioned today that they might be able to plop on a couple

25   extra words to their construction and fix the problem.

1    And I think today, plaintiff mentioned that their claim

2    mentioned something about the query scope is restricted by

3    the classification labels.  Actually, what they suggested is

4    that it is narrowed by it.

5           But here, if you look, they're still not talking

6    about the search being restricted.  They're talking about

7    the query being restricted.  It's the same problem.  That

8    they want to talk about the "what" and not the "where."

9    They don't want to focus on what is going on at the search

10   engine.

11          Now, this is a straight issue in relation to

12   the construction is whether the search is restricted to the

13   category of information in the information retrieval system,

14   meaning a single category, or whether the search criteria

15   includes one or more classification labels assigned in the

16   automatically categorizing step.

17          Now, in their briefs, they didn't mention

18   anything about the claims.  They provided no basis for why

19   the category of information meant "one or more."

20          Here, and then elsewhere, they had talked about

21   that "a" means "one or more" in relation to the assigning

22   step, but they never discussed it here, and we pointed that

23   out to them.  So, today, we had a slide that purports to

24   provide an antecedent to "a," and there is a sleight of hand

25   going on here.  I will put on, in the Elmo, what plaintiff

1    did here and we can walk through it.

2              So what plaintiff seems to be arguing now, even

3    though the parties -- by the way, the parties, in the joint

4    claim construction statement, have agreement on various

5    antecedent terms.  And you will notice that this new

6    explanation that the category of information here is a

7    category of information 1(a) is not there.  We have never

8    seen it before today.  In fact, it just completely

9    misrepresents what is going on in context of the claim.

10             The first element is talking about how "a"

11   defined -- how you define the organization document contents.

12   And you do that with, you have the organized classification

13   of document content that has -- there is a classification

14   label and each classification label has with it a category

15   of information, and so there is a one-to-one correlation

16   with those.  That is kind of talking about it in the back row.

17   That is not talking about any specific category or anything

18   done in relation to any query.  That is just generally.

19             Then, when you get to the automatically

20   categorizing step, a classification label is assigned.  And

21   there is no dispute that that is the same classification

22   label as the assigned classification label.  But now,

23   because we have pointed out that there is no antecedent

24   basis for the category of information or there is no "a"

25   preceding it, meaning that the default rule of "a" means

1    "one or more" doesn't apply, they looked back and now

2    they're trying to say that each classification label

3    corresponding to "a" category of information is somehow the

4    antecedent basis to "the" category of information in the

5    last step.

6              Well, again, first of all, at a very high level

7    that doesn't make sense, because the first element is just

8    about defining this organization.  It's not about this very

9    specific generation of the query.

10             But, further, it wouldn't even make sense that

11   it would refer back to the one above because the one above

12   has to have -- there has to be a one-to-one correlation

13   between in the organization classification.  In the

14   organized classification of document content, there has to

15   be a one-to-one correlation between the classification label

16   and the category.  If there wasn't, then the last step

17   wouldn't work because it talks about formulating the query

18   to restrict a search at the information retrieval system to

19   the category of information in the information retrieval

20   system identified by the assigned classification label.

21             Well, in order for you to know what the category

22   of information would be, that would apply to the assigned

23   classification label, there has to be a one-to-one

24   correlation in the first element.  So they're kind of

25   comparing apples and oranges here to create an argument.

1        Now, the next dispute is on the "categorizing"

2   phrase.  Again, your Honor, I think that plaintiff had

3   pulled an excerpt from our brief and had suggested that this

4   issue regarding the single classification label is like the

5   crux of our argument.

6        That is just not true.  As I mentioned before,

7   there are multiple disputes here, and this dispute is not

8   wrapped up in the "restricting."  Obviously, we think that

9   our construction is correct here, but if you don't go our

10  way on this one, it doesn't mean that you don't have to go

11  our way on the other one.

12       And I think it's also point to note that the

13  dispute here is not whether multiple classification labels

14  can be used in the categorization step.  We acknowledged

15  multiple classification labels can be used.  But the point

16  is that when you actually -- the step is going to end in

17  having this one classification label.

18       Here, the context of the claims is very

19  important.  And you have the Kyocera case that we cited.

20  Claim 41 directs that it's important to look at how these

21  terms are used in context.

22       Here, there is not really any dispute that the

23  categorization step has a relation to the formulating step

24  because there is no dispute that the assigned classification

25  label in the last step is the label that is assigned in the

1    categorizing step.

2              And this is sort of relating to the point that

3    I mentioned earlier.  That you have to have the single

4    classification label assigned at the end of the prior step.

5    Otherwise, you wouldn't know what category of information

6    to use in the last step.  If there are multiple categories

7    identified, if there are multiple assigned categories, you

8    wouldn't know what the category of information in the

9    information retrieval system you are supposed to go to.

10             Again, there is no dispute that the assigned

11   classification label in the automatically formulating step

12   is the label that is assigned in the prior step.

13             And we have already talked about the one-to-one

14   correlation and this whole congruence of there being a

15   one-to-one, in the beginning, correlation when you define it,

16   and then a single classification label assigned, and then that

17   single classification label is used to identify the category

18   of information.  All of this really only makes sense if it's a

19   single label.

20             Now, Xerox points to the default rule and they

21   say that "a" means "one or more."  It is a default rule, but

22   Baldwin says that where the language of the claims

23   themselves, the specification, the prosecution history,

24   necessitate a departure from it, then you do that.  And we

25   would submit what I just described above is that is exactly

1    the situation here.

2          Now, this is kind of hard to read, but this is

3    from their footnote kind of explaining the reasoning of this

4    "one or more" rule, and it talks about in the middle how you

5    want to avoid a situation if there is an open-ended claim

6    that requires a widget, that if there is two widgets, that

7    shouldn't get you out of infringement.

8          But here we're talking about restricting the

9    category and assigning.  You are assigning a category and

10   then later using that assigned category to restrict a search

11   to that category.  So this is a completely different issue

12   of then what is going on here, that someone might just add

13   in a widget or two to avoid infringement.

14         Now, it's true that a document could be assigned

15   multiple labels as a technical matter, but that is not what

16   the patent is talking about.  The patent is talking about a

17   way to improve precision recall and allowing a construction

18   that is unbounded with how many categories could be assigned

19   and then later searched would be totally contrary to that;

20   and, in fact, it would allow here what is on slide 48.  That

21   here you have a situation where you have assigned all,

22   documented all the labels, and you looked in all the

23   categories.  And we would submit, your Honor, that that is

24   not precision recall and that the construction that Xerox

25   allowed is totally contrary to the purpose of the invention.

1          Xerox is correct -- and this is what we

2     acknowledged earlier -- that in the categorization process,

3     multiple categories may be used.  But as shown in Figure 49,

4     you only actually get to one assigned label.  The explanation

5     of Figure 39 is consistent with that.  It says that you have

6     the categorizer identifies classification labels; science,

7     biology, genetics.  And then it, talks underneath there, you

8     might go determine what the best one is, and then when you

9     do that, you found that it's this path, that genetics is the

10    best.  And so then you focus the search on the documents

11    found in the single node of document hierarchy genetics, 3910.

12          And Xerox's construction also eliminates really

13    the notion of determining.  If you look, it sort of takes

14    out the idea that you are categorizing here.  There is

15    really no justification for that leap as well.

16          We already talked about, again, these are three

17    separate issues here, and they're all independent.  Despite

18    the fact of plaintiff trying to wrap them up together, they

19    are three separate issues and they should be addressed

20    separately.

21          Unless your Honor has any further questions, I

22    will go on to "query."

23          This is somewhat of a different issue, although

24    I think it is somewhat related grammatically to the issue we

25    have addressed with "restrict."

 1                I think it's telling that they indicated that --

 2     I think plaintiff indicated that we want to put the request,

 3     the notion of a request in here to focus the jury on what

 4     happens at the search engine or the results to focus the

 5     jury on what happens at the search engine.  But the claims

 6     specifically aren't formulated to restrict a query -- a

 7     search at the search engine.  So there is a logic to that.

 8                I think this sort of undercuts -- underlies

 9     why plaintiff doesn't want to include requests or search

10     results in there.  There doesn't seem to be a dispute we're

11     talking about search here.  They say that, to be sure, the

12     formulated query will be used in performing a search, and

13     their own construction includes search.

14                But as a matter of common sense -- and I don't

15     think there was really any dispute on this.  That when we

16     think of a query, especially a search query, that it's

17     something that you would use to request results to a search.

18                I mean the query is to an information retrieval

19     system.  That's the whole point.  The whole point of it is

20     to get results, and you get those by doing a request.

21                The dependent claims talk about receiving

22     results, and Phillips says that it's useful to use claims,

23     both asserted and unasserted.  It doesn't matter whether the

24     claims are asserted or not.  We can still look at them to

25     determine what the meaning of the terms that are asserted

1    are.  They don't just somehow vanish from the patent because
2    they have been asserted in a case.
3             I think defendants' construction is consistent
4    with Figure 39 which depicts an HTTP request.  This is what
5    is getting sent to Google, and that is a request for search
6    results.
7             Now, Xerox also says that the specification
8    doesn't say anything about sending the formulated query to a
9    search engine to receive results.
10            That is sort of an incredible statement, I
11   think, Your Honor.  If you look, it says it all over the
12   place.
13            This is slide 56.  In column 49, 49 to 54:
14   "After processing the query by submitting it to the information
15   retrieval system (e.g., Google, Yahoo!, Northern Lights),
16   ..." the results are returned.
17            Figure 40 talks about obtaining results and
18   directing the query to locate a node.
19            Column 48, lines 31 to 34.  "A document service
20   request and the personality associated with an uploaded
21   document identifies entities that are used to perform other
22   document service requests such as queries."
23            Well, a query is a document service request.
24   In here, it's for search results.  That is just what our
25   construction provides.

1           Now, Xerox says that you could store a query or

2   display a query.  I mean I guess that is possible, but that

3   is not what this patent is about.  This patent, as Xerox

4   says, this is about using a query for performing a search.

5   And it's about providing precision recall of information

6   retrieval systems.  I don't know how that is served by just

7   displaying or storing a query.

8           And even in their first paragraph, in their

9   opening brief, they say that the patent relates to search

10  technology, and that you are using the content of a document

11  to generate a query to an information retrieval system.

12  And that the objective of this is to improve the quality of

13  information retrieval systems, and that precision recall

14  means both successfully retrieving information and retrieving

15  relevant information.  So the whole purpose of this patent

16  is about what the query is going to do at the information

17  retrieval system.

18          There is no claim -- they seem to be suggesting

19  a claim differentiation issue between claims 11 and 18,

20  somehow suggesting that the notion of results is improperly

21  included in the query because results are mentioned at 11

22  and 17.  It's pretty clear there are other elements in 11

23  and 17 beyond results.  They're talking about ranking

24  results and enriching selected content results.  Neither of

25  those things are in our definition of query.  So there is no

1    claim differentiation issue.

2              The next one here is "classification label."

3              The dispute here -- there are really two

4    disputes here.  One is whether -- and, frankly, I didn't

5    really fully understand this first one was a dispute until I

6    think we got their response brief -- and then the second --

7    which is whether the classification label needs to classify

8    or used to classify.  And then the second one is whether a

9    label needs to be a word or phrase or whether it's a label

10   in any format.

11             Again, we've talked about what these labels are.

12   That you have a classification label that corresponds to a

13   category.  And the use of "classification label" is very

14   consistent throughout the specification.  I don't think

15   there is any real dispute about this.

16             There are these words, label, science.  Where

17   does that classify?  You know that if you look in the

18   genetics node, you are going to find genetics documents.

19   And the system knows that, and that is why they put it in

20   there.

21             The DMOZ ontology that is disclosed in the

22   specification uses these same types of labels.

23             The Google directory engine is referred to the

24   specification.  That is slide 66.  That also uses words or

25   phrases.

1           This consistent use of labels in this manner

2    shows that this is the way that we should be interpreting

3    label in this case.  And so we found some definitions that

4    are perfectly consistent with that:

5           A descriptive, classifying, or identifying word

6    or phrase.

7           A word or phrase indicating that what follows

8    belongs in a particular category.

9           Xerox seems to take an issue with this because

10   they're not from a technical dictionary, in citing Phillips.

11   But Phillips also says when terms are used in a non-technical

12   sense that it's appropriate to use general dictionaries and

13   that is what is going on here.

14          They certainly are helpful here.  There doesn't

15   seem to be any real dispute that the term "label" is used

16   here not in a technical computer science sense but talking

17   about in a classification system such as the Dewey Decimal

18   System in the Library of Congress.

19          In those systems, words are the labels.  There

20   is a whole hierarchy there that is somewhat similar to the

21   DMOZ hierarchy, although not exactly the same.  And it uses

22   these words, like philosophy, world history, that sort of

23   thing.

24          Now, there are call letters or numbers

25   associated with those systems, but those call letters or

1    numbers aren't the labels, in and of themselves.  They're

2    just associated with it, but even those, it's important to

3    note that even those letters -- I'll address this in a

4    little bit -- do serve a classification purpose and so that

5    is critical even in these systems.

6              Now, plaintiff talks about how our construction

7    doesn't make sense because computer electronics represents

8    electronic documents in zeroes and ones.

9              Well, that is a straw-man.  No one would think

10   that the label "genetics" has to be sitting in the inner

11   workings of a computer as genetics.  We all know it's 0s and

12   1s, and certainly the inventors knew that, and they knew

13   that when they wrote claim 9, it included nouns and verbs.

14   That someone wouldn't think they were excluding 0s and 1s

15   being used.  And, in fact, "genetics" written in a binary

16   computer language is no less a word "genetics" than if it

17   was in French, if it was in Chinese or anything else.  And

18   it's notable that even numbers are represented by binary

19   code in the ASCII code that they point out to.  And this is

20   at slide 72.

21             Now, Xerox construes classification label as a

22   label in any format that identifies a category in the

23   organized classification context.

24             You had asked plaintiff's counsel about this.

25   You know, we do have a dispute about the word or phrase

1    which they actually don't even address in their construction

2    because they include the word "label" which we still think

3    is a word or phrase, but they say it identifies a category.

4              So I guess using Figure 39 that the

5    classification label would not be "genetics" but it would be

6    something that identifies the category "genetics."  It's not

7    clear at all what it is that is being identified here.  I

8    mean if you look at how the spec talks about it, it refers

9    to the categories as the classification label.

10             So, for example, in Figure 33, it talks about

11   the DMOZ category.  It's business, finance, computer.  Those

12   are the labels.  So to say that it identifies the category,

13   I mean what is the category then?  It doesn't really make

14   any sense.

15             And then they say it's a classification label,

16   but yet Xerox is saying -- this is slide 74 -- that it is

17   not being used for classification.

18             Classification is the act or method of

19   classifying.  And the classification label is the label you

20   use for that method.  I mean just by mention, just by common

21   sense.  So the notion that a classification label shouldn't

22   be used for classifying just is contrary to the English

23   language.

24             Now, they set up this "identifying" argument

25   through a number of different dictionary definitions.  One

1   of them included in their opening brief, which we didn't

2   see, that appeared today said that it's an item that is used

3   to identify something or someone.  And they admitted that

4   the second part of it, that makes it clear that it's like a

5   label.

6           I made this argument just because I had wanted

7   to make sure that at some point in my life, I had a Campbell

8   soup label in a PowerPoint.

9           THE COURT:  Mission accomplished.

10          MR. PERLSON:  Yes.

11          (Laughter.)

12          MR. PERLSON:  Then they point to computer

13  dictionary definitions.  Now, they say the technical meaning

14  of "label" in computer science is simply an identifier.

15          Well, it doesn't look like there is any single

16  technical meaning of label to me.  There are 12 labels

17  there, and they haven't said why they liked -- they're using

18  this one.  There is no support why this one is appropriate.

19  And we would submit, your Honor, that there is not really

20  any need to go to the IBM Dictionary of Computing for this

21  because what we're talking about is a classification in

22  ontology.

23          Here are some other dictionary definitions.

24          Now, getting back to this point of classifying.

25  Even the numbers like in the Dewey Decimal System, you have

1    576.   500 is science, 570 is life science, and 576 is

2    genetics.  So if a librarian is going to place the books,

3    even if just using the numbers, they can use that 576 to

4    classify the book.

5            But if it's just some random selection of

6    numbers and identifier, as plaintiff seems to allow, you

7    can't do that.  It's not a classification label anymore.

8    It's an identifier.  There is all sorts of things that have

9    identifiers:  license plates, library cards, and things like

10   that.  But that is an identifier.

11           The claims require a classification label, not

12   an identification label.

13           "Selected document content" is next.

14           Okay.  So here we are at "selected document

15   content."  Let me just clarify what is going on here and

16   what the confusion is.  It's not simply the fact that there

17   is not an "a" before this and then "selected document

18   content."  I think that contributes to the confusion that

19   there is no antecedent basis, and we're not saying that it's

20   an automatic case that it's indefinite if there is not an

21   antecedent basis.

22           What we're saying is here, you don't know what

23   the selected document content is.  It has to be selected in

24   some way, but by whom?  By what?  For what purpose?  You

25   have no idea.  I mean who knows what it could be.

1    It could be a pop-up window that appeared on

2    the user's computer screen.  They didn't select that but

3    it's there and maybe it can be inputted into the system.

4    Could it be content that a user had

5    cut-and-pasted from a web page for some other purpose

6    completely?  That was certainly selected for one purpose,

7    but was it selected for the purpose of being an input to

8    this system?  No.

9    Is it content randomly chosen by the user or

10   computer user's computer or a website that the user visited?

11   Is it a random selection?  Is that included within this?

12   Is the content on the web page that a user

13   navigates to that the publisher chose to highlight, so the

14   publisher chose something that it wanted to show?  Is it a

15   favorite?  I mean any of these things.  And we don't know.

16   I think that during plaintiff's presentation,

17   they mentioned the notion of like a patron at a restaurant

18   making a selection from a menu.  That is what selection

19   means.  Someone is making a choice.  But when the waiter

20   takes that down and takes that to the line cook who maybe

21   gives it to the chef, they're not making selections at each

22   one of those other instances of the menu item.  They're not

23   making a selection of a menu item.  It's already been

24   selected.

25   So if I select something on my computer, then I

1    chose to download it, and then if this claim system is going

2    around looking at my computer, running this system on top of

3    it and happens upon this document that I chose to download

4    three days ago, is that selected document content?  I don't

5    know.

6              I mean that is really the problem.  And the

7    specification doesn't answer it.  I mean it kind of does the

8    same thing on slide 83, column 41 at 10 to 14.  It just kind

9    of assumes it's there.

10             Now, I think that during the presentation,

11   plaintiff had pointed to a portion of the specification

12   where there might be some sort of automatic selection or

13   that documents might be picked out.

14             That sort of, to me, just shows the confusion

15   here.  It kind of goes back to the earlier slide.  Do we add

16   that to the list of things that can be "selected document

17   content" or don't we?  How do I know, as a competitor?  I

18   want to build a system and I want to sit down and figure

19   out whether a document -- I want to have a "not selected

20   document."

21             There is no way to answer that question.  And that

22   is why we cited the Halliburton case as the principle of

23   indefiniteness.  We're not saying it is the exact same

24   situation as Halliburton.  These claims are read differently,

25   but it's the bounds, that you don't know the bounds of the

```
 1    claim.  What is selected document content?  What isn't?

 2              We have to be able to provide a construction for

 3    that; and we would submit, your Honor, there isn't one.  We

 4    certainly haven't found one from plaintiff.

 5              What they've provided, they made an argument

 6    that this is simply the input to the claimed method.

 7              Well, but that doesn't tell us anything really.

 8    I mean, obviously, document content is getting into the

 9    method or system somehow.  If that is what is "selected"

10    means, then it doesn't mean anything because the patent

11    would mean the exact same thing without it.  And we know

12    from Federal Circuit precedent that claims are to be

13    interpreted with an eye towards giving effect to all the

14    terms in the claim.

15              In fact, if you look at Xerox's construction, it

16    doesn't even include the notion of selection at all.  That

17    is not even in it.  Instead, they have this construction

18    where the document content can be all or part of the document.

19              Now, I think plaintiff pointed to Figure 38, and

20    I think he is dead on, that is what the document content is.

21    But that is not all or part of a document.

22              And if you look at it on 39, again and again and

23    again, throughout, it's always talked about as if it's a

24    document, and a whole document.

25              This portion of the specification -- and this is
```

1    on slide 87 that Xerox cited and I think mentioned today --

2    is from column 48, 52 to 55.  It says:  "... as shown in

3    Figure 38, the document content 3612 or alternatively

4    limited context ... surrounding the entity 3808 is analyzed

5    by categorizer 3610."

6              But that is two different things.  Document

7    content is something different than limited context.  The

8    limited context is used in one of the dependent claims.

9    One of the dependent claims talks about looking what is

10   around the entities to see what is there.  So this is just

11   a total non sequitur.  It has nothing to do with defining

12   what document content is.

13             And, again, there is just no construction.

14   Plaintiff hasn't provided one.  We would submit under

15   Halliburton that would show we have an indefinite term.

16             If you have no questions on that, I will move on

17   to everybody's favorite, "order of steps."

18             I don't think there is any real dispute about

19   the law here that when the steps are performed in the order

20   recited as a matter of logic or grammar that they must be

21   performed in that order, or when the steps implicitly

22   require that they be performed in the order written, like

23   such as, for example, when the subsequent step refers back,

24   that they're in order.  Both of these are true here.

25             And this shows it.  We talked about how in 1(c),

1    you are using the organized classification content that you

2    built in (a) and in claim (d), you are using the entities

3    that were identified in (b).  And then in (d), you are using

4    the label that was assigned in (c).

5           Claim 18 is basically the same thing.

6           So when most of the steps of a method refer to the

7    completed steps of a prior step, they should be performed in

8    order.  This the E-Pass case.

9           Now we're at slide 93.

10           And Xerox concedes that step (a) of claim 1 must

11    be performed before (c) and (d).  It concedes that step (b),

12    entities, must precede the completion of step (d), and it

13    concedes that step (c) must precede the completion of step

14    (d).

15           Now, Figure 40 I think is very useful to talk

16    about what is going on here in the order.  This is really --

17    you saw before, I would kind of walk through Figure 40 and

18    how it applies to the dependent claims.  This really

19    describes the flow.  That when you extract the entity from

20    the document content, then you have the query, and then you

21    do the search.  It's the same order that the claims require.

22           Now, Xerox argues that you could assign a

23    category and then add it to the query and then assign

24    another category and add it to the query.

25           I think this is really just part of their --

1    this is really just a derivative of the "one or more"

2    categories step.  It doesn't work that way.  Since there is

3    only a single category assigned, it's assigned and then you

4    move on.

5            They also say that the claim language doesn't

6    preclude some sort iterative process whereby the

7    identification step will find an entity, and then the query

8    formulation step will add it, and then there is another

9    query.  So you have like identifying the entity and then

10   adding it to the query; identifying the entity, adding it to

11   the query; back and forth.

12           That is not what the claim says.  The claim says

13   you are identifying a set of entities.  You are not identifying

14   entities.  So you identify the set and you use that set in

15   the later term.  So you have to have a set first before you

16   can use it as a later term.

17           I mean I guess it's possible that you could have

18   a system like that, but that is not the claim they wrote.

19           Even their own construction of "restrict to

20   search to the category," which I will not suggest that you

21   enter but I think it's useful for a demonstration purposes,

22   seems to acknowledge that the entities have been identified

23   and assigned before you have the query formulated.

24           Now, Xerox cites to this catchall language at

25   the very end of the specification, the kind of language you

1    might see at the end of almost any patent, that talks about

2    the fact that, oh, it's not limited by what we said above.

3    You can do it in all sorts of different ways, blah blah

4    blah, but that type of generalized language doesn't undo

5    what is claimed.  It doesn't undo what the patent says.  And

6    we cite the University of Rochester case.

7              This is in slide 98.

8              So we have the order of steps, claims 2 and 19.

9    Similar issues.  It refers back.  You have claim 2 which is

10   further limiting the query that has already been performed

11   in claim 1.

12             The specification is useful on this, too.

13             On the left is where you initially would run the

14   query; and then on the right is where, if you don't get your

15   accurate results, you go and you use this aspect vector and

16   then you would add it on.  Then you might add the terms on.

17   And then you would run it again.  But that is after the

18   query has already -- not only already been formulated but

19   it's after the queries in fact already have been run and you

20   have already obtained results.

21             They point to -- this is on slide 102 -- an

22   excerpt from the specification 49, 31 to 35, saying that

23   this somehow suggests that these are all added at once.

24             But it just says that in one embodiment, they're

25   appended to the query and that these things would exist in

1    the query.  It doesn't say that in claim 1, you would do it

2    once.  It just says at some point, you end up with this, and

3    that is just what this shows.

4              And unless your Honor has any -- does your Honor

5    have any questions?

6              THE COURT:  No, just really whether any of

7    colleagues wish to weigh in at this point.

8              MR. FENWICK:  Two minutes, your Honor.

9              THE COURT:  Certainly.

10             You have about a half hour left on that side.

11             MR. PERLSON:  What do you want?  The Elmo?

12             MR. FENWICK:  Yes.

13             MR. PERLSON:  I'll get it.

14             MR. FENWICK:  Thank you.

15             So, your Honor, I just want to take a couple

16   minutes to sort of step back.

17             This "restrict a search to a category" piece

18   of the last limitation of the claim is a big problem to the

19   plaintiff in this case.  The accused products are

20   implemented in software and so you might choose to give the

21   plaintiff the benefit of the doubt and say, yes, they didn't

22   know how the stuff worked before they got into discovery.

23             But now they know.  They've got the source code.

24   They've spent a lot of time looking at it.  They know they

25   have a big problem.

1          In the spirit of cooperation with my

2     codefendant, I tried to give Mr. Perlson my best line and he

3     didn't use it for some reason.  I'll have to find out later.

4          But we are accused, defendants are accused of

5     trying to import limitations from the specification into the

6     claims.  What we're trying to do is read limitations from

7     the claims into the claims.  We're just trying to keep this

8     limitation of "restrict to the category" in the claims.  The

9     plaintiff is trying to read that limitation out of the claims

10    because they know now it's a big problem for them, and they

11    employ a few different devices to try to do that.

12         One thing they do, your Honor, is try to focus

13    your attention on this issue of whether only a single

14    classification label is assigned.  That makes sense from

15    their perspective because, candidly, that is a closer issue,

16    a closer claim construction issue.

17         The issue of construing "restrict a search to

18    the category," that is not a close issue.  It's there in the

19    claim.  It's quite explicit what that means if you look at

20    the spec.

21         If you were to drop the last limitation from the

22    claim, the automatically formulating a query limitation,

23    and you only had the first three limitations, the

24    comprising rule would say, yes, an assigned observation of a

25    classification label -- assigned classification label is

1    "one or more."

2              But in that last limitation, we get restrictive

3    language.  We get language of limitation.  The comprising

4    rule about "one or more" goes to claim limitations that call

5    for the presence of something, and the rule says you can't

6    get out from under -- you can't get out of the claim just by

7    adding another claim; right?

8              With respect to category and that last

9    limitation, you are not talking about the presence of

10   something.  You are talking about language of limitation,

11   restricting a search to that category.

12             But, again, we would say because that language

13   of limitation is in there with respect to the category

14   wherein the search is restricted, the logic of the rest of

15   the claim language suggests that only a single classification

16   label is assigned.

17             But your Honor could find -- and we think that is

18   the best construction.  Your Honor could find that one or more

19   classification labels is assigned, but the search still has to

20   be restricted to a single category.  And your Honor could find

21   that one or more classification labels can be assigned and the

22   search has to be restricted to the categories that correspond

23   with those assigned classification labels.

24             We don't think that is the right construction,

25   but your Honor could go to those interim steps without

1    leaping all the way to the plaintiff's position, which is

2    that we're going to focus you on the issue of assigned

3    classification label, and then we're going to hitch to that

4    this other issue of restricted category.  If you go our way

5    on assigned classification label, you are going to have to

6    go our way on restricted category.

7              The two issues are not linked up that way.

8              In fact, they have gone to great lengths to try

9    to accomplish what I'm talking about.  There is a sentence

10   in our opening brief that says the crux of the dispute

11   between the parties is whether only a single classification

12   label may be assigned, and that shows up in the responsive

13   brief.  It's in the presentation today.  We admit that that

14   is the real issue between the parties.

15             That sentence appears in a section of the brief

16   that is about that categorizing limitation.  It's clear from

17   the context that what we're saying is the crux of the issue

18   about the categorizing limitation is whether a single

19   classification label, only a single classification label is

20   assigned.

21             That is not the core of the dispute between the

22   parties.  The core of the dispute between the parties on

23   claim construction is about this restricted category

24   limitation and are we going to say it's actually there in

25   the claim or are we going to close our eyes and pretend it's

1    not there.

2              The other thing I would say, your Honor, is the

3    parties did not give enough attention to Figure 40 in the

4    briefing here.  I would urge your Honor to spend some time

5    focusing on Figure 40 because Figure 40 is a very explicit

6    illustration of what is going on in the claims that are

7    asserted in this case.

8              If you follow it, your Honor, you have the

9    entity being extracted here and added to the query, and then

10   this categorization process takes place with the assignment

11   of a single classification label.  And then the query is

12   directed to the node, the single node that corresponds with

13   that assigned classification label.

14             At that point, claim 1 has been practiced.  That

15   step happens every single time in Figure 40, every single

16   time.

17             Mr. Stark talked about the possibility of

18   popping up to a parent node.  The only time you pop up to a

19   parent node is if you don't obtain any results at all.  No

20   results are obtained.  Then you change the location of the

21   node to the parent node and try it again because you didn't

22   get any results and you need to have results to get anywhere

23   with this.

24             Then we ask are the results accurate?  If the

25   results are not accurate, if they're not the results you are

1    looking for, then we try the techniques that are claimed in

2    the dependent claims.  We go get some stuff from around the

3    entities and we add it to the query, to the short run aspect

4    vector.

5                Then we take that new query, that augmented

6    query and we go back to the same node, the same node that

7    corresponds to the assigned classification label and we try

8    that.

9                And if that is not accurate, then we move -- and

10   that short run aspect vector is I think addressed in claims

11   2 and 3.

12               If that still doesn't get us accurate results,

13   we go to the category vocabulary limitation.  We go get some

14   more words that sort of define the class, and we take that

15   further augmented query, a different query, a new query, and

16   we run that one against the single node that is identified

17   by the assigned classification label.

18               And so you see the actual practice of the claims

19   illustrated in Figure 40, and you always practice claim 1 in

20   Figure 40.  You may or may not get to the dependent claims

21   because you may or may not get accurate results, but you

22   always practice claim 1 as its construed by the defendant.

23               THE COURT:  Before you take that down, at what

24   point are you saying you have completely practiced claim 1

25   at least one time?

1          MR. FENWICK:  You know, you practiced claim 1 at

2    least one time when you had directed the query to the

3    located node, because then you know that your query was

4    formulated to the "restrict a search to the located node."

5          THE COURT:  So do you need to have results in

6    order to practice claim 1?

7          MR. FENWICK:  You don't need to have results to

8    practice claim 1, but you need to have formulated a query

9    that would restrict the search to the particular category,

10   the "where" that we've been talking about, to the particular

11   category of the information system that corresponds to the

12   assigned classification label.  And if you have done that,

13   and you have come up empty, you have practiced the claim.

14         But you have specified "where" in the

15   information retrieval system you are going to conduct that

16   search.  And once you decide you don't get results, I need

17   to pop up higher, I need to search a bigger space, then you

18   are outside the claim.

19         The claim doesn't have to read on every single

20   possible permutation of the flowchart in the diagram that is

21   Figure 40.  But every single time, when you go through the

22   flowchart, you practice claim 1.

23         THE COURT:  That's it for defendants at this

24   point?

25         MR. PERLSON:  Yes, your Honor.  I don't have any

 1    rebuttal to that.

 2                (Laughter.)

 3                THE COURT:  All right.  Plaintiffs on claim

 4    construction.

 5                MR. STARK:  Thank you, your Honor.

 6                Your Honor, as I said at the outset, we're not

 7    here saying that the queries formulated by the claim in this

 8    patent or claims are unrestricted.  On the contrary, the

 9    claim says they are restricted.

10                It's not accurate and it wasn't even in our

11    first brief, this is a straw-man the defendants are bringing

12    up, to claim that we are trying somehow to read "restricted"

13    or "to restrict" out of the claim.  It's in the claim.  The

14    claim goes to the jury.

15                If we think about, what are we really about here

16    today?  The jury's task is going to be to determine whether

17    the claim is infringed.  They've got to look at the elements

18    of the claim.

19                Now, the construction can help resolve ambiguities.

20    It can help shed lights on issues of law.  It can help with

21    your Honor's instructions to the jury as to how they're

22    going to read the claim.  They're going to be presented with

23    something that doesn't have "to restrict" in it, and we've

24    never suggested that that would be the case.  That wouldn't

25    be the case under any scenario.

1          The exercise that we're about today is really

2    trying to resolve ambiguities.  It's not the Court's job,

3    quite frankly, and very respectfully, to just rewrite the

4    claim just because defendants would like you to rewrite it.

5    We want to put in new words in place of all the words of the

6    claim.  The words of the claim are what they are.

7          If there is not an ambiguity, there is not a

8    reason to construe or come up with some new form of words

9    that will give the jury two forms of words that they have

10   to compare against the accused products.  It's really

11   primarily to resolve ambiguities.  And I haven't heard the

12   defendants put their finger on any ambiguity of that "to

13   restrict" at all.  They simply say, well, we want to

14   substitute "confine" for "to restrict."

15          THE COURT:  So everybody agrees "restrict" or

16   some word like "restrict" has to be in this claim, because

17   it's in the claim; right?

18          MR. STARK:  Right.

19          THE COURT:  But there is a dispute, it seems to

20   me, as to what is restricted.  You maintain the restriction

21   doesn't mean that the search has to be limited to a single

22   node or a single category; correct?

23          MR. STARK:  That's right.

24          THE COURT:  And I understand the defendant is to

25   say it does have to be restricted that way; correct?

1               MR. STARK:  I think that is right.

2               THE COURT:  And that is the claim construction

3    dispute, is it not?

4               MR. STARK:  I think it is, but I think that really

5    was the point of our second brief in particular is that that

6    is really where the dispute is.  Are we talking about one

7    classification label, only one, a single classification label,

8    and a single category, therefore, that is searched or are we

9    talking about more than one?  And the defendants stood here

10   and said, well, that is really not what we're talking about.

11   That is kind of a side issue.

12              I think your Honor had put your finger on it.

13   That is precisely the issue.  Are we talking about one or

14   more than one?  And I have gone through where it says in the

15   claim, the law is on "a" meaning one or more than one.

16              And that, incidently, it's not just a default

17   rule.  That is a pretty hard and fast rule if one looks at

18   the claim on the case law about this.  It's about as hard

19   and fast of a rule that we find on patent law.  It is full

20   of a lot of rules, some of which are pretty murky, but that

21   one that "a" means one or more, really not working.  There

22   is hardly any exception to it.

23              And we looked at the claim language where it

24   says -- actually, can we put that up again?

25              So it says, it starts with a classification

1    label and a category of information.  Those are going to be

2    one or more.  And the case law tells us, the Baldwin case

3    amongst others, when you have a subsequent use of the

4    things, the category of information, the assigned

5    classification label, it just refers back here and

6    re-invokes the plural meaning of the original thing.

7           Now, counsel tried to claim there is some sort

8    of sleight of hand going on here or tried to suggest there

9    was an agreement there was no antecedent.  I'm not aware of

10   that.  There are agreements some things refer back to other

11   things.  We didn't say there is no antecedent to the

12   category of information.

13          In any event, it plainly is.  It's right there

14   in the claim language, and the Federal Circuit tells us

15   claim construction begins and ends with the claim language.

16   That is what we're about.  That is the most important thing.

17          We've got a category of information.  That means

18   more than one, potentially.  A classification label means

19   more than one, potentially.

20          Counsel tried to say, well, I couldn't really

21   follow what he was saying but he was trying to say somehow

22   this didn't quite make sense if you read it the way I read

23   it.

24          And with all respect to counsel, I just can't

25   agree with that.  The first section there on organized

1    classification of document content sets up the relationship

2    between classification labels and categories of information.

3    It's not necessarily one-to-one, as counsel said.  It's a

4    classification label.  Each one of those correspond to a

5    category of information.  So in each case, one or more

6    corresponds to one or more.  So that is the set up.

7            Then a classification label as a organized

8    classification of document content is assigned to the

9    document content.  So one or more assigned to the document

10   content.

11           And then at the end, it is simply saying the

12   category of information or the categories of information

13   that correspond to those labels go to the query to restrict

14   the search.

15           There is nothing surprising about that.  It's

16   talking about, thus, the assigned classification label.  The

17   Federal Circuit anticipates that and says that is going to

18   be just a reference to the one or more classification

19   labels.

20           Then in the nature of the English language, you

21   would expect you would say the category of information that

22   corresponds to the assigned classification label.  That is

23   just -- to make it comprehensible in English, that is the

24   way you would write it, but none of that takes away from

25   what the Federal Circuit tells us as to how one construes

1    language like that.

2              Also, none of this is at all inconsistent with

3    the specification.  It's quite consistent with the

4    specification.  As I said, there are many places where the

5    specification talks about assigning multiple classification

6    labels.

7              If we could go to slide 13.

8              Just point out here, once again, here in the

9    specification, it says, the fourth line down, "These

10   classification labels," plural, "in one embodiment are

11   appended to the query."  Labels, plural, go into the query.

12   Really, it couldn't be much clearer than that in the

13   specification.

14             What our dispute is, beyond the question of

15   whether it's one classification/one category, I think there

16   is only one answer to that point.  It is multiple at least

17   potentially of each.  It's one or more of each.

18             But beyond that, what we're really talking

19   about, what we heard a lot about from the defendants, is how

20   is the search done in the information retrieval system after

21   it gets the query which was formulated by the claim?  And

22   there was a lot of talk about, well, we look at a single

23   folder.  We're only going to look at one dot.  This is

24   really what they're driving at, to try to argue here as well

25   this whole claim means you are only going to have to look at

1    one particular place.

2            Well, that is clearly just not the case.  If you

3    have multiple classification labels that can correspond to

4    multiple categories, it could be several of these.

5            I also explained how with regard to Figure 40 --

6    I'm going to come to that in a moment -- the search done by

7    40 can be broadening to go up to a parent, up to a parent,

8    and gradually expand the search.  But the point is it's

9    focused by what the classification label is.  What the

10   category was that was specified.

11           So just to put that big picture context in there,

12   the whole claim is talking about, in the first instance, a

13   search for information about entities.  So if you just had a

14   query about some entities, like Michael Jordan, for example,

15   you might get it a lot of documents about a great basketball

16   player even if you were looking at someone that was in

17   computer science, and that is the starting point before you

18   get to the invention.

19           The invention says, well, let's figure out from

20   the context of the document what category of information or

21   categories we're talking about in this particular document

22   that we're looking at, and then we'll go search for Michael

23   Jordan using those classification labels, those categories

24   to refine that search, to give you some greater precision.

25   That is what it says.  It doesn't say which of many methods

1    need to be used to implement that search.

2              Just to come to Figure 40 for a moment.  There

3    are several points I want to make sure are clear on Figure

4    41.

5              One is that this is an example that was talked

6    about in the patent as an example that is showing an

7    embodiment, and embodiments are not limiting so there is a

8    lot of stuff in here which doesn't necessarily read to claim

9    1.  It does limit claim 1.

10             In particular, these items up here, defendants

11   talk about, Mr. Perlson talked a little bit, too, some of

12   these have to do with what is going on with dependent

13   claims.  I agree, that wouldn't be implicated by claim 1.

14             However, I think two things are very important

15   to note here.  One is that when you get to, in this process,

16   down to where some results have been obtained, if there were

17   no results obtained, as I think Mr. Fenwick pointed out,

18   then you can adjust what node you were looking at, then you

19   can keep going up to broader nodes, searching more and more

20   of the tree of categories of information.

21             So it's clearly two things.  One is how the

22   search is done.  The claim doesn't talk about that.  It

23   doesn't talk about adjusting the node.  It doesn't talk

24   about reformulating.  It doesn't talk about -- it doesn't

25   even say you have to look in one node.  It says it's

1    formulating a search which is restricted.

2              But this is an example of how a search could be

3    implemented.  It might be a search that could search broader

4    parts of the tree than just one, just one node and one

5    folder.

6              Another aspect of this that is pretty

7    interesting.  I think Mr. Fenwick touched on this briefly.

8    He said that when you get to direct query to locate the

9    node, you have done, you completed one iteration of claim 1.

10             I think that is close but not quite right.

11   First of all, claim 1 doesn't say and watch the query off

12   and have it start doing something, which is what "direct

13   query to located node" here says.  Claim 1 says formulate a

14   query, so that would be actually just a little bit just

15   prior to step 4010.

16             The other thing is your Honor asked the question

17   about there being use of the word "a query," "generate a

18   query" right at the outset of the claim.  I mentioned Figure

19   40 in reference to that.

20             The claim actually contemplates you could

21   formulate more than one query.  And this whole thing in this

22   chart is an example of formulating more than one query, and

23   several queries could be formulated iteratively potentially,

24   and that whole formulation of several theories would be

25   practicing the claim.

1          So the claim isn't only one query because,

2     again, it says a query.  The Federal Circuit tells us that

3     is one or more.  It actually could be several queries.  And

4     this is an example of an implementation embodiment in which

5     you have several queries formulated and kicked off in

6     sequence with successfully broader searches.  That is one

7     embodiment.

8          The point here being defendants are trying to

9     read into this claim narrowing material about how specifically

10    a search is conducted, and the claim doesn't reach how the

11    search is conducted.

12         It actually shows a number of different ways a

13    search could be conducted, none of which is necessarily

14    limited to only searching one folder or one node in the tree

15    of information.

16              THE COURT:  But how about, does the first

17    search, the first time you enter the query, does it have to

18    have a restriction on what is searched?  Where the search

19    occurs?

20              MR. STARK:  I think the first search -- as you

21    go through the claim, any query that is generated, the first

22    search or another one, has to be restricted by supplying

23    classification labels or categories in addition to entities.

24    That doesn't mean that it has to be necessarily a search

25    that is limited all to a folder that is all the way down at

1    the bottom of a leaf of the tree.  It could be -- all that

2    is required is a classification label.

3              If we look at defendants' favorite diagram here,

4    defendants acknowledge all these things are different, are

5    classification labels.

6              THE COURT:  Is this Figure 39?

7              MR. STARK:  Yes, Figure 39.

8              Science is a classification label.  That could

9    potentially be a classification label that goes into query,

10   and it might result in a broader search than just the

11   genetics node down there.  It might include all these things.

12             THE COURT:  Under your construction, could you

13   search -- are you practicing the claim if you search "science"

14   first and then later search "genetics" for some reason?

15   That is, if you go from a broader to a narrower?

16             MR. STARK:  I think you would be.  The claim, it

17   doesn't -- just as you have to have classification labels

18   and put them in the query.

19             THE COURT:  Are you practicing a claim if the

20   first search is at the top level of 3904?

21             MR. STARK:  You could potentially be.  If you

22   searched and you were -- if the result of your query, if

23   the scope of the query was such that you just were getting

24   everything concerning Michael Jordan, I think, that would

25   not be this claim.  But you could potentially have a search

1    that is implemented by starting at the top level and where

2    it is looking is all of these different nodes.  But what is

3    deemed to be responsive of the scope of the query is Michael

4    Jordan in the field of computer science.

5            The claim doesn't speak to the efficiency, the

6    particulars of what file folders or what tables or how the

7    information is even stored in the information retrieval

8    system.  It doesn't speak to that.  What it speaks to is

9    the scope of the query.  What is going to be responsive to

10   the query?  And it would have to be that Michael Jordan,

11   documents pertaining to Michael Jordan and computer science

12   are at least favored in some way so it's going to be

13   focused, as the specification said, in that area.

14           THE COURT:  I want to save you two minutes to

15   talk about discovery.  You have about two minutes left.

16           MR. STARK:  Thank you, your Honor.  Very

17   briefly.

18           So a lot of what the defendants spend their time

19   on, trying to restrict and narrow the scope of the claim,

20   is all embodied in Figure 39 is an example.  The inventor's

21   testimony was about particular embodiments that you might

22   find.  All that is just embodiments.  They're getting away

23   from the claim language because they don't find what they

24   need in the claim language.

25           Briefly on the format of the labels.  Counsel

1    gave the example of the Dewey Decimal System which I think

2    quite nicely supports us.  They pointed out in the Dewey

3    Decimal System, 576 would be the identifier for "genetics"

4    and using that, a librarian could go to the stack and

5    classify a book, put it on the shelf.

6              That is exactly what we're saying.  The

7    classification label is the identifier that allows you to

8    make that correspondence between I've got some information.

9    Where do I put it?  Where I got a query, where can I look?

10             THE COURT:  But what if the books are just

11   numbered in the order that they are purchased by the

12   librarian?

13             MR. STARK:  That then wouldn't be a

14   classification label, because that doesn't help you.  It

15   doesn't associate the book with the classification.

16             THE COURT:  It is just an identification.

17             MR. STARK:  Yes, merely an identification.

18   We're not saying the classification label is merely an

19   identification like a serial number of that sort.  But that

20   is not -- it's not the description.  Let me put it this way.

21   The organized classification of documents essentially

22   consists of contents.  If you look at the Dewey Decimal

23   System under 576, you would find the content of genetics, so

24   the content of genetics would be classified there.  That is

25   what the classification is.  Then you need an identifier to

1   help you find that classification, either the card catalog

2   or on the stacks.

3          That is what it is.  It's not that the

4   identifier itself isn't used.  When I get a new book in, I

5   don't say, "aha, it's 576."  I have to say, "oh, this is a

6   book about genetics."  I find genetics and I say, "oh, okay.

7   It's identified by the label 576" and go to the shelf

8   accordingly, go to the index accordingly.  That is what

9   we're talking about.

10         And just to wrap up on the issue of "selected

11  document content."  It doesn't matter where the document was

12  selected or by whom it was selected or by what it was

13  selected, how it was selected.

14         I come back to my chef analogy, trying to

15  identify what the chef does.  He doesn't care where the

16  selected food items come from, how they were selected.  To

17  describe his activity, it's just to prepare the selected

18  food items.

19         It's the same thing with the computer.  If one

20  thinks about the claim as the computer program function,

21  which actually is really what it is, it would be your own

22  function, generate a query from X, where X is document

23  content, selected document, whatever is the given document

24  content.

25         I think that is quite understandable.  And one

1    can tell from the claim itself quite readily what the bounds

2    of that are.  That the claim says it's the content from

3    which you get the entities.  It's the content that you

4    categorize.  Nothing else in the claim depends on.  In fact,

5    nothing at all in the claim depends on how the document

6    content was selected or by whom or when or anything that

7    counsel mentioned.

8            With that, your Honor, I think that concludes my

9    comments on the claim construction.

10           THE COURT:  Okay.

11           MR. STARK:  Thank you, your Honor.

12           THE COURT:  Any rebuttal on claim construction

13   from defense?

14           MR. PERLSON:  Yes, your Honor.  A few points.

15           First of all, going back to this notion of the

16   construction of "restrict" and including the meaning of

17   "restrict to the category" in the construction.

18           The whole point of this process is to provide

19   constructions for words in the claim.  The fact that they

20   don't --  the fact that the words remain in the claim

21   doesn't defeat the purpose of this.  We're going to be

22   arguing to the jury based on these constructions.  On appeal,

23   the parties would need to rely on these constructions.  We

24   wouldn't be able to say the Federal Circuit, well, if the

25   jury found that our systems met their construction that they

1    were wrong because the claim requires it to restrict to the

2    category.

3              The Federal Circuit would tell us that is what

4    the construction is.  That is where they're supposed to do.

5    And maybe we would be able to appeal the construction, but

6    for purposes of the infringement, you have to apply the

7    construction.

8              And they say, well, why do defendants need to

9    rewrite the construction?  Well, we would submit, your

10   Honor, that the rewriting here is being done by plaintiff

11   by eliminating, essentially admittedly, "restrict to the

12   category" completely.

13             A few other things.  Let's pull up the slides

14   here.

15             On Figure 39, again, I just want to clear up the

16   science/biology/genetics.  The query is to that path.  It's

17   genetics/science/biology.  There was some suggestion to the

18   contrary.

19             And similarly, here on Figure 40, it's very

20   clear that what is talked about here is that at 4008, if the

21   located node has not been searched with the query, then the

22   query as it is defined is directed to the located node.

23   It's not other nodes.

24             The description of Figure 40 is very clear.

25   And, again, this notion of Figure 40, that there could be

1    multiple queries and everything, but the rest of the Figure

2    40 as we have shown, and this is also in our tutorial as

3    well, it talks about dependent claims.  There is a loop.

4    And, you know, yes, you may go back and run the search

5    again, but that's the subject of the dependent claims.

6            Go to slide 29.

7            So I think that in the rebuttal, plaintiff

8    basically conceded that they intend to include this in their

9    construction, and that a situation where you would actually

10   be searching beyond the assigned category, that that would

11   still somehow be within the claims.

12           Now, they tried to get out of that by, again,

13   trying to tie in the "one or more" labels issue go into it,

14   but I amended the slide that to show why that really doesn't

15   matter.

16           THE COURT:  Is it your amendment of your slide

17   29?

18           MR. PERLSON:  What?

19           THE COURT:  Is it your amendment of your slide

20   29?

21           MR. PERLSON:  Exactly.  Excuse my scribble.

22           So, yes, this is slide 29.  And now what I have

23   done with it is I have assumed for the sake of argument here

24   that the claim allows for two categories to be assigned.

25   Let's assume that there is two categories assigned.  Then

1    you would have two categories searched, if that is what the

2    patent allowed.

3              But under Xerox's construction, you would still

4    be able, apparently, to search all the other categories.  I

5    think this shows that, clearly, as Mr. Fenwick had

6    discussed, these are two different issues.  Whether it's

7    "restrict to the category" or "restrict to the categories,"

8    the search goes to the category that is assigned.  It can't

9    go on this other area because that is not what the patent is

10   about.  That doesn't provide the precise recall.

11             And this is precisely, what is on the right,

12   that the plaintiff is trying to accomplish by reading out

13   the claims -- reading out the "restrict to the category"

14   limitation to the claims.

15             Plaintiff also pointed -- this is their slide

16   13 -- to an excerpt from the specification to try to say

17   that more than one classification label can be assigned.

18             First of all, if you look at this, it says --

19   this sort of makes the follow-up to this point.

20             First of all, this is not talking about what the

21   claim is.  It's obvious because it says, restrict the scope

22   of the query, i.e., the entity and the context vector.

23   That's subject to the dependent claim.

24             But in any event, to the extent it's relevant

25   here, it's relevant to show that I underlined "restrict to

1    the folders."  That when you use the classification,

2    they're restricting the scope of the query to the folders

3    corresponding to the classification labels in the document

4    collection of an information retrieval system.  So that

5    wouldn't allow for the example on the right where I have

6    added an extra category that is assigned.

7            This is slide 12 from plaintiff's presentation.

8    And I took the liberty of drawing some oddly drawn arrows,

9    but hopefully I can explain what I am trying to convey here,

10   and that they're now saying that the assigned classification

11   label in the last step relates to the classification label

12   in the first step.  That it refers back to that.

13           But if that was really true, if they really

14   believe that to be true, then they would say that each

15   classification label corresponding to the category of

16   information in that first step would correspond with the

17   category of the assigned classification label in the last

18   step.

19           I did it the other way?

20           MR. FENWICK:  Category to category.

21           MR. PERLSON:  Okay.  Sorry.  Let me start over

22   again.  I'm going to the fly here.

23           So what they have agreed to now is the agreed

24   construction is a classification label.  So the agreed

25   construction is that the assigned classification label in

1    1(b) is the classification label that is assigned in 1(c).

2                 They don't refer back to claim 1 for that;

3    right?  And under their logic, the antecedent basis should

4    refer back to the first element for both the category and

5    the class, and they don't do that, and so their logic

6    doesn't work out.

7                 There was a reference to the classification

8    label, and that the librarian would somehow not use 576 to

9    classify?

10                I mean I don't think that is right.  I think

11   that they do use that.  A librarian knows what the Dewey

12   Decimal System.  They might use 576 just in the same way

13   they would use genetics.  And it seems like the plaintiff

14   conceded the classification label, in fact, does need some

15   sort of classification purpose.  And they're saying that

16   just a simple number, it wouldn't be a classification label,

17   but as we have shown, that is what their construction

18   allows.  And based on that concession, it should be

19   rejected.

20                "Unselected document content."  Plaintiff says

21   the system doesn't care what whether it's selected or how to

22   select it.

23                Well, it's in the claim.  It's a selected

24   document content, so presumably it does care.  And if they

25   didn't care, Xerox didn't care, their claim didn't care,

1        the system didn't care, then they could have written it

2        "document content," but that's not the claim they wrote.

3        They wrote "selected content document."  So because every

4        claim term has to have meaning, they can't just wash it away

5        by saying it doesn't matter.  It does.  And we would submit

6        there is no way to give meaning to that.

7                    THE COURT:  Thank you.

8                    MR. FENWICK:  So, your Honor, just addressing

9        very briefly this argument about antecedent to the category.

10       The reference in the first limitation to each classification

11       label corresponding to a category of information, and

12       information retrieval system?  That is a reference generally

13       to this correspondence and association.  It's a reference to

14       this group.

15                    The antecedent rule goes to a prior reference

16       to the particular thing that is at issue later and not to

17       this sort of a generalized sense.  And that is why, to try

18       to reiterate what Mr. Perlson was saying, when the parties

19       located the antecedent basis for the assigned classification

20       label down here, they looked up to this element right here

21       (indicating) -- I'm sorry -- to this element right here

22       (indicating) and the prior reference to a classification,

23       and not all the way back up to this element (indicating)

24       which is describing kind of the general architecture in

25       referring to these things in the abstract as opposed a

1    particular instance.

2              THE COURT:  So in element (d), they were looking

3    to element (c) but not all the way to element (a).

4              MR. FENWICK:  That is right.  That's what they

5    were doing in the classification label.  The same logic goes

6    to the category information.

7              Plus, we have this language of limitation again.

8    This language of limitation "restrict a search" to the

9    category of information.  So the claim is not about the

10   presence at this point.  It's not about the presence of one

11   thing.  It's about this limitation.  And so, again, the

12   comprising rule goes to situations where the claim calls for

13   the presence of a thing and you can't evade infringement by

14   adding a second thing.

15             If the claim of was written to mean what they

16   say it means, then it would have said information concerning

17   the set of entities to a category information identified by

18   the assigned classification label.

19             That language would apply for the possibility

20   that there is more than one category in play there and you

21   are restricting it to a category.

22             But even then, you still got this language of

23   limitation in there.  And if I say, if the claim calls for a

24   widget and there happens to be a second widget, you still,

25   the claim requirement is still true.  There is still a

widget. There happens to be an additional one.

If I say a search is restricted to a category, and then someone comes along and restricts a search to a group of two categories that are in different parts of this system, it's no longer true that the search is restricted to one of those categories.

So you haven't evaded infringement by adding something to the operation of the process. You are doing something very different. You are doing something very different and you are no longer practicing the language of the claim.

THE COURT: Okay. Thank you.

Well, that's it on claim construction. I've left us a few minutes to talk about discovery and schedule.

There, let me say I am not going to modify the schedule to leave it open-ended awaiting for the Court's claim construction ruling. I don't know when you will get the claim construction ruling. It may be that you end up having to write your expert reports with alternative constructions. That happens from time to time in my cases.

I understand it happens regularly in other judge's cases so I'm not going to grant the request to change that, which I understand is part of what the defendants are asking for.

I am, however, willing to give some minimal

1    extension to complete fact discovery and, if necessary, to

2    complete expert discovery.  There are different time frames

3    mentioned in the letters.  I'm going to leave it to all of

4    you to see if you can agree on how much additional time you

5    need based on what I have just told you about not having an

6    open-ended schedule.

7              In terms of whether to require the defendants

8    to supplement their interrogatories at this time.  At this

9    time, I'm not inclined to make the defendants do that, but I

10   have reserved two minutes for plaintiffs, if they wish, to

11   argue to the contrary, and then defendants can respond

12   briefly, if they wish to do so.

13             MR. STARK:  Thank you, your Honor.  I will be

14   brief.

15             The difficulty that I have, your Honor, with

16   defendants disclosures of their invalidity contentions is it

17   truly is kaleidoscopic.  There is nothing in there that I

18   can point to to say, well, now I'm on notice that this is

19   what they're going to argue.

20             First of all, there are just so many.  No one is

21   going to be anywhere near trial with this many contentions

22   and this many pieces of prior art.  There are a handful in

23   there that are of particular significance, and I'm sure that

24   must be.  That is opaque to me.

25             THE COURT:  But why isn't right now the time to

1    require them to narrow and be more precise?  You are going

2    to get an expert report.  You are going to get an expert

3    deposition.  You are going to get a pretrial order.  We're

4    going to get there.  Why now?

5              MR. STARK:  Well, as to why now, your Honor, I

6    would say we're almost at the end of the fact discovery,

7    subject to maybe it gets extended by a minimal amount.  We

8    were almost at the end of that.  We're going into expert

9    reports, and I think we need to be able to prepare to

10   understand what they're about with these contentions.

11             On our infringement contentions, we have, well,

12   it could be this, it could be that, it could be 15 other

13   things.  We have given them, subject to some tweaking

14   perhaps, you know, this is what we're going at.

15             On the contrary, on their side, we've got, well,

16   I don't have a single claim chart there that says here is

17   something which we believe is an anticipation.  What we have

18   instead is, well, here is a reference which might have the

19   elements.  And, actually, I'm not going to say this is the

20   organized classification of document content or this is a

21   label.  This might be anticipation.  Well, if it's not, then

22   combined with 15 other references, literally like 15 other

23   references, then maybe it's an obviousness case, and I'm not

24   going to tell you why a person skilled in the art would

25   actually be motivated to put those various pieces together

1    to plug the holes.

2              And just as one example here.  So this is from

3    one of Yahoo!'s references.  We picked one to illustrate the

4    point.  We really could have picked any of them to make a

5    similar point.

6              This is on the Ford reference.  And they say,

7    for the defining organized classification of document

8    content element, it says, as shown in Figure 3, blah blah

9    blah, and it says, present invention will look for the

10   temporally contiguous occurrence of a particular keyword or

11   set of keywords, such key words to be used to infer the

12   general topic or subject matter.

13             It doesn't say there that there is an organized

14   classification of document content.  It doesn't say what

15   that would be.  It says we're going to do some inference.

16   It's not going to tell you how.

17             As to this, they say maybe that is anticipation,

18   maybe it's obviousness.  We're not going to tell you which.

19   We're not going to tell how you combine the references to

20   get there.  And they have I think 27 other references for

21   which they don't give any claim chart at all.  And Section

22   101, Section 112, where they give us virtually no

23   information on what their defenses are.

24             THE COURT:  I understand your position.

25             All right.  Let me hear briefly from the

1    defendants.

2            MR. STARK:  Thank you, your Honor.

3            MR. LISSON:  Your Honor, defendants have taken the

4    same approach to the invalidity contentions in this case as it

5    has done in many patent cases across the country, really, and

6    plaintiff hasn't provided any reason or authority to require

7    more here.

8            We've pointed out exactly where in a reference

9    we believe each limitation would be found by providing both

10   the page citation and, as you saw, the text from the

11   reference.

12           Now, I guess one of the complaints is that we

13   didn't explicitly say whether a chart was an anticipation

14   chart or an obviousness chart.

15           I think it's pretty clear those references for

16   which every limitation has a corresponding citation is an

17   anticipation chart.  Those that were done in combination or

18   didn't have -- well, they were only done in combination

19   really -- are an obviousness chart, and the reasons to

20   combine the motivations to combine are in the narrative

21   where we lay out both of the scope of the prior art, the

22   motivation to combine and supporting documentary and

23   testimonial evidence.

24           THE COURT:  And when are you going to limit

25   which bases on which you are trying to invalidate this

1       patent?

2               MR. LISSON:  Well, your Honor, I think we laid

3       out contentions based on what we understand to date both in

4       terms of the facts, Xerox's contentions and the possible

5       claim construction rulings.  That may change over the next

6       few weeks.

7               But then, as your Honor identified, expert

8       reports will be really where, if anything has changed in

9       between then and now.  The plaintiff will be on notice of

10      exactly what our contentions are, our arguments, any

11      inferences, opinions will be obtained in the expert report,

12      which they will obviously receive prior to having to put

13      together their expert report.

14              THE COURT:  All right.  Thank you.

15              I'm going to adhere to my inclination and at this

16      time deny the plaintiff's request to require the defendants to

17      supplement their responses to the interrogatories.  Mind you,

18      I don't imagine that the time limits we set in this case will

19      allow for the defendants to meaningfully present all of the

20      theories that they have in their interrogatories at this

21      point, but I'm satisfied for this point in the case, the

22      plaintiff has what it needs.

23              We will take claim construction under

24      advisement; and we will be in recess.  Thank you.

25              (Claim construction hearing ends at 11:43 a.m.)