IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| XEROX CORPORATION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>GOOGLE INC., YAHOO! INC., RIGHT )<br>MEDIA INC., RIGHT MEDIA LLC, )<br>YOUTUBE, INC. and YOUTUBE, LLC, )<br>)<br>Defendants. ) | C.A. No. 10-136-LPS<br><br>**PUBLIC VERSION** |

LETTER TO THE HONORABLE LEONARD P. STARK
FROM DAVID E. MOORE DATED JUNE 23, 2011

(VOLUME I)

cc:

Clerk of Court (via hand delivery)
Counsel of Record (via electronic mail)

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza 6th Floor
1313 N. Market Street
Wilmington, DE 19899
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant Google Inc.*

Dated: June 23, 2011
Public Version Dated: June 30, 2011
1018566 / 35374

*Filed on Behalf of Defendants*



Potter
Anderson
&Corroon LLP

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984-6000

www.potteranderson.com

David E. Moore
Partner
Attorney at Law
dmoore@potteranderson.com
302 984-6147 Direct Phone
302 658-1192 Fax

June 23, 2011; Public Version Dated: June 30, 2011

**VIA ELECTRONIC FILING**
The Honorable Leonard P. Stark
United States District Court
J. Caleb Boggs Federal Building
844 King Street
Wilmington, DE 19801

**PUBLIC VERSION**

Re: *Xerox Corporation v. Google Inc., et al.*, C.A. No. 10-136-LPS

Dear Judge Stark:

Pursuant to the Court's June 16, 2011 Order, Defendants Google Inc., Yahoo! Inc., and Right Media LLC respectfully file this letter brief, requesting that Xerox be ordered to produce documents identified in its May 24, 2011 privilege log as having been withheld on the basis of a purported common interest privilege between Xerox and IPValue (listed in Appendix A hereto). (*See also* Ex. 15.) Because Xerox has not and cannot meet its burden of showing a common legal interest between Xerox and IPValue, Xerox should be ordered to produce the withheld documents.[1]

**Xerox's commercial relationship with IPValue.** IPValue is Xerox's "licensing agent." (Ex. 5.) "IPValue is a patent licensing company that works with a select number of technology leaders, such as Xerox (including PARC), British Telecom, and NXP, to obtain a return on their R&D investments through commercialization of their patent portfolios." (Ex. 6 - 2/2/11 Letter Brief, at 1) (underlining added). IPValue's role is to commercialize Xerox's patents. Indeed, this is precisely how IPValue describes its "Compelling Business Model" on its website: "IPVALUE partners with owners of significant intellectual property portfolios to commercialize their IP assets." (Ex. 7; *see also* Ex. 8 - Declaration of IP Value Vice President Andrew Wu, ¶ 2 (stating IPValue works with "technology leaders, such as Xerox . . . to obtain a return on their R&D investments through commercialization of their patent portfolios."); Ex. 9 - 3/30/11 Hearing Tr., 21:17-21("companies like Xerox, we advise them on how to commercialize their entire portfolio")) (underlining added). IPValue's duties in commercializing Xerox's patent portfolio do not involve providing legal advice to Xerox. Rather, as their "Master Services Agreement" states, ▮

---

[1] Google also subpoenaed documents from IPValue, which is located in the Northern District of California. Xerox's counsel, Cravath Swaine & Moore, represented IPValue in its response to Google's subpoena. (Ex. 1.) Google was forced to file a motion to compel in the Northern District of California after IPValue refused to produce internal communications responsive to Google's requests. (Ex. 2.) IPValue retained other counsel to oppose Google's motion, which was ultimately granted. (Ex. 3-4.) Although IPValue has not yet identified the documents it is withholding as privileged as it was ordered to do, IPValue may likely assert the same common interest as Xerox.

███████████████████████████████████████████████ (Ex. 10 - XRX 1231085). Xerox controls litigation concerning its patents. (*Id.*).

Nor does IPValue have an ownership interest in the patent-in-suit or Xerox. Rather, "IPValue is a licensing company that often works on a contingency fee basis. Notwithstanding the fact that IPValue may be compensated on contingency, Xerox, not IPValue, is the owner of the patent-in-suit and the plaintiff in the underlying lawsuit." (Ex. 3 - Opp., at 2 n.1; *see also* Ex. 11 - Declaration of Keith Wilson, IPValue Senior Vice President, ¶ 4 ("It should be understood that IPValue is not an assignee or owner of the patents at issue, and IPValue has no ownership interest whatsoever in Xerox Corporation.")) Despite this purely commercial relationship, Xerox asserts a common interest privilege for over 1,200 documents on its log, many of which purport to reflect the substance of "legal advice" of IPValue in-house counsel. (*See e.g.* Appendix B).

**The common interest doctrine requires a common legal, *not* just commercial, interest.** The common interest doctrine is an exception to the general rule that the attorney-client privilege is waived following disclosure of privileged materials to a third party. *Leader Technologies, Inc. v. Facebook, Inc.*, 719 F.Supp.2d 373, 376 (D. Del. 2010); *Union Carbide Corp. v. Dow Chem. Co.*, 619 F.Supp. 1036, 1047 (D. Del. 1985). For a common interest privilege to exist, there should be a demonstration that "the disclosures would not have been made but for the sake of securing, advancing, or supplying legal representation." *In re Regents of the Univ. of Cal.*, 101 F.3d 1386, 1389 (Fed. Cir. 1996) (citations omitted); *Leader*, 719 F.Supp.2d at 376. Further, for a communication to be protected, the interest must be "identical, not similar, and be legal, not solely commercial." *In re Regents of the Univ. of Cal.*, 101 F.3d at 1390; *Leader*, 719 F.Supp.2d at 376; *Union Carbide*, 619 F.Supp. at 1047 (emphasis added).

**Xerox has not shown an identical, *legal* interest shared between Xerox and IPValue.** Xerox has a legal interest in this case as the owner of the '979 patent. IPValue, however, does not share that legal interest. "IPValue is not an assignee or owner of the patents at issue, and IPValue has no ownership interest whatsoever in Xerox." (Ex. 11, ¶ 4.) Instead, IPValue may get a "commission" following a successful outcome of litigation by Xerox involving the patent. (Ex. 12 - 6/7/11 Letter from Xerox counsel.) Notably, at the hearing on Google's motion to compel as to IPValue, IPValue would not even refer to its commission as providing an "interest" in this case:

> Court: Is it the case that you have a contingent fee interest in the success of this litigation?
>
> Mr. Wu: I'm not sure I would call that an interest. We get paid on contingency for - typically that's our arrangement. . . .

(Ex. 9 - 3/30/11 Hearing Tr., 23:4-11) (emphasis added). While IPValue may gain financially through any Xerox recovery in this case through a commission, that does not establish an identical legal interest as would be required to demonstrate a common interest privilege.[2] Rather, as IPValue has repeatedly stated, its role is to commercialize Xerox's patents, making any shared interest commercial, not legal.

---

[2] In opposing Google's motion to compel, IPValue tried to distance itself from this case to minimize what it was required to produce and the costs it was required to incur. Although Google argued and the Court acknowledged that IPValue should not be able to shirk its duties in responding to Google's subpoena because it has a financial interest in the case, this financial interest is not a legal one as is required to establish the common interest privilege.

Further, although it is its burden to do so, Xerox has never articulated a specific identical legal interest it shares with IPValue. Instead, Xerox has vaguely pointed to IPValue's role as a licensing agent to commercialize Xerox's patents and agreements relating thereto. Indeed, during the parties' June 8 meet and confer, Xerox admitted it has no written common interest agreement with IPValue and Xerox has never pointed to any oral agreement to that effect either. Nor has Xerox identified to Defendants any case that has found a common interest exists between entities that have a commercial relationship such as IPValue and Xerox.[3]

**<u>Xerox has failed to show the shared written communications are privileged.</u>** Xerox has not shown that communications with IPValue are for the purpose of providing or even sharing legal advice at all. Rather, they serve the business purposes of both IPValue and Xerox. As Judge Zimmerman in the Northern District of California explained in his order granting Google's motion to compel as to IPValue, if IPValue's in-house counsel were functioning in a capacity to further the business goals of IPValue—that is, to commercialize Xerox's patents—then, their documents would not be privileged. (Ex. 4 - 4/28/11 Order, at 2 (*Google Inc. v. IPValue Management Inc.*, No. C-11-80016, Dkt. No. 34 (N.D. Cal. April 28, 2011)). Similarly, in *Diagnostic Systems Corp. v. Symantec*, CV-06-0211 (C.D. Cal. 2008), DSC was in the business of acquiring, licensing, and enforcing patented technologies. (Ex. 13 at 3.) The court explained that documents "created when DSC employees were functioning in the capacity of business executives furthering the business goals of DSC," were <u>not</u> privileged. (*Id.* at 8-9.) On the other hand, documents created when employees were functioning primarily as attorneys representing DSC were privileged. (*Id.*)

Here, IPValue is an intellectual property consulting company that acted as Xerox's "agent" to commercialize the '979 patent. Documents created by IPValue (including its in-house counsel) when functioning in the capacity of business executives furthering the business goals of IPValue— for example, to license the '979 patent—are not privileged. Indeed, Judge Zimmerman explicitly noted this business purpose in granting Google's motion to compel as to IPValue:

> Wilson's testimony that counsel mainly provided advice to IPValue regarding patent infringement theories and defenses to patent assertions also shows that counsel worked in the capacity of furthering IPValue's business goals. IPValue's decision to use attorneys for this function does not result in all communications relating to the counsel's work becoming privileged....[T]he primary purpose behind IPValue's in-house counsel's advice was to increase IPValue's business.

(Ex. 4 - 4/28/11 Order, at 3.) Xerox has made no showing that the underlying communications with IPValue and its in-house counsel were done for anything other than to further the business goals of IPValue and its non-legal client Xerox. (*See e.g.* Exs. 8, 11.)

For the foregoing reasons, this Court should order Xerox to produce the withheld communications with IPValue.

---

[3] The night before Defendants' letter brief was due, Xerox indicated it thought *Leader* and *Corning*, cited above, are distinguishable because the facts in those cases are not the same as here. (Ex. 14.) That the facts in those cases are not exactly the same as here, however, does nothing to rebut the holding in those cases that a common interest cannot exist where, as with Xerox and IPValue, there is no identical, legal interest.

The Honorable Leonard P. Stark
June 23, 2011; Public Version Dated: June 30, 2011 – Page 4

                                                      Respectfully,

                                                      */s/ David E. Moore*

                                                      David E. Moore

                                                      *Filed on Behalf of Defendants*

DEM:nmt/1018566/35374

Enclosures

cc:     Clerk of Court (via hand delivery)
        Counsel of Record (via electronic mail)